576 P.2d 566 (1978)
AMERICAN HERITAGE BANK & TRUST COMPANY, Plaintiff-Appellee,
v.
O. & E., INC., Defendant-Appellant,
The Wine Shop, Inc., Clyde M. Trees, Marlys J. Trees, Defendants.
No. 76-823.
Colorado Court of Appeals, Div. III.
January 5, 1978.
Rehearing Denied January 26, 1978.
Certiorari Denied March 27, 1978.
*567 Leon P. Sterling, Colorado Springs, for plaintiff-appellee.
Raymond S. Duitch, Colorado Springs, for defendant-appellant.
STERNBERG, Judge.
Clyde and Marlys Trees, owners of the Wine Shop, Inc., personally and on behalf of the corporation, executed a promissory note, security agreement, and financing statement to the American Heritage Bank and Trust Company. These documents were properly filed and granted the Bank a security interest in the Wine Shop's inventory, stock in trade, furniture, fixtures, and equipment "now owned or hereafter to be acquired." Thereafter, one Oakley Ellickson became a junior lienor by obtaining from the Wine Shop a promissory note secured by the same collateral.
The Wine Shop subsequently defaulted on both notes. Ellickson without informing the bank, took over the assets of the Wine Shop, began operating the business, and then commenced an action entitled "Complaint in Foreclosure," naming the Bank and Mr. and Mrs. Trees as defendants. In that suit Ellickson admitted that he had taken possession of the Wine Shop property subject to the Bank's security interest and sought to discharge the obligation owed to the Bank to enable him to achieve "effective ownership of the security."
Upon receiving a copy of this complaint, the Bank contacted Ellickson's attorney and received repeated assurances that Ellickson intended to make full payment to the Bank. In reliance thereon, the Bank took no further action to protect its security until it discovered that Ellickson had formed a wholly owned corporation, O. & E., Inc.,[1] had transferred the Wine Shop's lease and liquor licenses to that corporation, and was selling the original inventory, commingled with new inventory. Fearing that its security interest would not be adequately protected by Ellickson's actions, the Bank filed a complaint in replevin and, pursuant to a writ, took possession of what it deemed to be collateral.
The Bank's complaint and Ellickson's foreclosure action were consolidated for trial, and, after hearing the evidence presented, the court found that the Bank's security interest was at all times paramount to Ellickson's junior lien. The court also held that the after-acquired property clauses contained in the Bank's security agreement and financing statement covered items which Ellickson had added in his operation of the business as O. & E., Inc. The court then granted judgment to the Bank and against the Wine Shop and Mr. and Mrs. Trees for the unpaid balance of their note to the Bank, and ordered the Bank to sell the collateral, to apply the sale proceeds first to the costs of the sale, then to satisfy the Bank's interest, and finally to give the surplusage, if any, to Ellickson as junior lienor. O. & E. appeals and we affirm.
O. & E. argues, first, that the after-acquired property clauses contained in the Bank's security agreement and financing statement did not cover the additional inventory and other items Ellickson brought to the Wine Shop premises when he was operating its business and, second, that its own "Complaint in Foreclosure" should not have been ignored, in effect, by the trial court in its determination that the Bank, *568 rather than O. & E., should control the sale and disposition of the property. We disagree with both contentions.
The issues in this case are governed by Article 9 of the Uniform Commercial Code, § 4-9-101 et seq., C.R.S.1973. Section 4-9-204, C.R.S.1973, allows a security interest to attach to after-acquired property where there is an agreement therefor, under circumstances such as those involved here. Also, § 4-9-306(2), C.R.S.1973, provides that:
"Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange, or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise . . . ."
While § 4-9-311, C.R.S.1973, states that a "debtor's rights in collateral may be voluntarily or involuntarily transferred," these two provisions must be read together. Section 311 does not invalidate the prior security interest under § 306(2). Fliegel v. Associates Capital Co. of Delaware, Inc., 272 Or. 434, 537 P.2d 1144 (1975).
In Inter Mountain Ass'n of Credit Men v. Villager, Inc., Utah, 527 P.2d 664 (1974), the court held that an after-acquired property clause in a security agreement covered not only the inventory and proceeds of the original debtor company, but also that obtained by a newly formed corporation which took over the operation of the business after the original security agreement had been made. In so holding, the court stated that:
"[A] debtor cannot destroy the perfected security interest of a secured party by merely changing its name or corporate structure, particularly when there is no evidence to indicate that the secured party had any knowledge thereof."
The Utah court also noted, as further support for its holding, that the security agreement, properly filed to give public notice, specifically provided that it would bind the original parties' "successors and assigns," (a provision similar to one contained in the Bank's security agreement in this case) and the agreement should be given effect according to its terms. Section 4-9-201, C.R.S.1973. See also Fliegel, supra, which, under similar facts, followed the reasoning of Inter Mountain. Consequently, we hold that the trial court's determination that the Bank's after-acquired property clause also covered assets brought in by Ellickson was proper.
With respect to O. & E.'s second argument on appeal, § 4-9-505(2), C.R.S. 1973, provides that when a secured party in possession of the collateral proposes to retain it, he must give written notice to the debtor and any other secured party. Ellickson gave no such notice and the Bank did not learn of his attempt to foreclose until it was served with the complaint in the foreclosure action. Nor did the Bank have knowledge of the transfer of the Wine Shop's lease and liquor license to O. & E.
Consequently, because Ellickson did not proceed in accordance with the provisions of the code on default of the Wine Shop, the disposition of the collateral ordered by the court was also proper. Section 4-9-507, C.R.S.1973. See William Iselin & Co. v. Burgess & Leigh, Ltd., 52 Misc.2d 821, 276 N.Y.S.2d 659, 3 UCC Rep.Serv. 1168 (Sup. Ct.1967); Harrison Music Co. v. Drake, 43 Pa.D. & C.2d 637, 5 UCC Rep.Serv. 417 (C.P.1967); J. White & R. Summers, Uniform Commercial Code § 26-7 (1972).
Judgment affirmed.
VanCISE and KELLY, JJ., concur.
NOTES
[1] In the proceedings that followed, Ellickson and O. & E., Inc., were treated as one entity. Ellickson was plaintiff in the foreclosure suit, while the corporation was the defendant in the Bank's action.