**Walter C. LAYNE, d/b/a One Stop Cleaners, Plaintiff-Appellant,**

v.

**FORT CARSON NATIONAL BANK, Defendant-Appellee.**

**No. 81CA0671.**

Colorado Court of Appeals, Div. II.

Nov. 12, 1982.

David D. Belina, Colorado Springs, for plaintiff-appellant.

Spurgeon, Haney & Howbert, P.C., Terence P. Fagan, Colorado Springs, for defendant-appellee.

VAN CISE, Judge.

In this action for declaratory judgment and for money damages, plaintiff, Walter C. Layne, appeals a summary judgment entered in favor of defendant, Fort Carson National Bank. We affirm.

For purposes of the summary judgment motion, the facts set forth below are undisputed. In November 1980, Layne owed the bank approximately $18,000 on a 1977 promissory note bearing 10.5 percent interest and secured by equipment in his clean-

ing business and by other property. His lease expired, and he was unsuccessful in having the lease renewed.

The security agreement pertaining to the pledged equipment provided that Layne "will not permit any of the collateral to be removed from [the leased premises] without the prior written consent of [the bank]" and that Layne will not "dispose of any of the collateral without the prior written consent of [the bank]." There were no conditions on the right of the bank to withhold its consent. The note provided that it could be accelerated in event of default under the security agreement.

Rather than incurring the expense of removing his heavy equipment from the leased premises, Layne arranged with the building owners that they would buy the equipment from him, while they would assume and agree to pay the note according to its existing terms. Layne was to remain obligated on the note and all of the original collateral would remain as security. The bank refused to consent to the sale and assumption unless the new owners and Layne would agree to a five percent increase in the interest rate. The new owners refused to consider an assumption on those terms.

Layne then proposed to the bank that the equipment be sold at auction. The bank refused to consent unless minimum bids were made by Layne, which he was unwilling to do.

Claiming that the bank had acted in bad faith and that the bank's refusal to consent to his proposed deal with the new owners will cause him to incur damages in cost of removal of the equipment and in the liquidation of the property, Layne instituted this action for declaratory judgment as to his rights to dispose of the collateral and for future damages. Concluding as a matter of law that the bank had used good faith in declining to consent, the court granted the bank's summary judgment motion.

On appeal, Layne contends that summary judgment should not have been granted because a factual rather than a legal question existed as to whether the bank acted in good faith in withholding its consent and in imposing the conditions on sale. We do not agree.

There was no dispute as to the material facts, and the court's legal conclusion was correct. The Uniform Commercial Code (UCC) provides, as a basic principle that "[e]very contract or duty within this title imposes an obligation of good faith in its performance or enforcement." Section 4–1–203, C.R.S.1973. "Good faith" is defined as "honesty in fact in the conduct or transaction concerned." Section 4–1–201(19), C.R.S.1973. Also, regarding secured transactions, the UCC provides that "[e]xcept as otherwise provided by this title, a security agreement is effective according to its terms between the parties ..." Section 4–9–201, C.R.S.1973. And, "[u]nless otherwise agreed or provided in this section, a secured party has on default the right to take possession of the collateral." Section 4–9–503, C.R.S.1973.

On the facts presented in this case, there was no violation by the bank of the "good faith" or "honesty" requirements of the UCC when it stood on its rights under the security agreement, Layne's dissatisfaction notwithstanding.

Layne relies on § 4–9–311, C.R.S.1973, pertaining to "alienability of debtor's rights," which provides that a "debtor's rights in collateral may be voluntarily or involuntarily transferred (by way of sale . . .) notwithstanding a provision in the security agreement prohibiting any transfer or making the transfer constitute a default . . . ." This statute authorizes a physical transfer of the collateral. *See* official comment 1, § 4–9–311, C.R.S.1973.

However, § 4–9–311, C.R.S.1973, must be read in conjunction with § 4–9–306, C.R.S. 1973. Section 311 does not invalidate the prior security interest. The transferee would take only Layne's interest, which would still be subject to the bank's security interest. *American Heritage Bank & Trust Co. v. O. & E., Inc.,* 40 Colo.App. 306, 576 P.2d 566 (1978); § 4–9–306(2), C.R.S.1973. And, since the transfer would have been

without the bank's consent, which is a default under the agreement, the bank could at that time call the note and take possession of the collateral. Accordingly, § 4–9–311 "does not avoid a contract provision making an unconsented transfer of the collateral a default." *Production Credit Ass'n v. Nowatzski,* 90 Wis.2d 344, 280 N.W.2d 118 (1979).

We "know of no provision in the UCC as enacted in this state, and none have been cited, which prevents a secured party from authorizing a sale of collateral by the debtor under specific conditions. We conclude that the provisions before us are not violative of the code . . . ." *North Central Kansas Production Credit Ass'n v. Washington Sales Co.,* 223 Kan. 689, 577 P.2d 35 (1978).

Judgment affirmed.

SMITH and STERNBERG, JJ., concur.