560 A.2d 151

**CREEGER BRICK AND BUILDING SUPPLY INC., and Donald H. Creeger and Marjorie Creeger, his wife, Appellants,**

v.

**MID–STATE BANK AND TRUST COMPANY, SEDA—Council of Governments, Community Development Corporation, Joint Rail Authority and Local Development Corporation, Appellees.**

Superior Court of Pennsylvania.

Argued Dec. 8, 1988.

Filed May 15, 1989.

Reargument Denied July 13, 1989.

---

32

Nora A. Hackett, Pittsburgh, for appellants.

Anthony J. Gerace, Jr., State College, for Mid–State Bank, appellee.

Before WIEAND, OLSZEWSKI and TAMILIA, JJ.

WIEAND, Judge:

The issue in this appeal is whether a borrower has stated a legally cognizable cause of action against a lending institution which, although it has not violated the terms of its loan agreement, has allegedly failed to deal with its borrower in good faith. The trial court held that the averments of the complaint were insufficient to state a cause of action and sustained preliminary objections in the nature of a demurrer. We agree and affirm.

■■■ A preliminary objection in the nature of a demurrer admits every well-pleaded fact and all inferences reasonably deducible therefrom. *McGaha v. Matter*, 365 Pa.Super. 6, 8, 528 A.2d 988, 989 (1987); *Pike County Hotels, Corp. v. Kiefer*, 262 Pa.Super. 126, 133, 396 A.2d 677, 681 (1978). It tests the legal sufficiency of the challenged complaint and will be sustained only in cases where the pleader has clearly

failed to state a claim for which relief may be granted. *Mudd v. Hoffman Homes For Youths, Inc.*, 374 Pa.Super. 522, 524, 543 A.2d 1092, 1093 (1988). If there is any doubt as to whether a claim for relief has been stated, the trial court should resolve it in favor of overruling the demurrer. *Mull v. Kerstetter*, 373 Pa.Super. 228, 229–230, 540 A.2d 951, 951 (1988).

The complaint in this case discloses that in 1983 Creeger Brick and Building Supply Inc. (Creeger, Inc.) purchased the Mt. Savage Refractories plant in Winburne, Centre County, intending to rehabilitate the facility and reopen a brick manufacturing plant. The principal financing was obtained in the form of a Small Business Administration loan from Mid–State Bank and Trust Company (Mid–State Bank) in the amount of two hundred and fifty thousand ($250,000.00) dollars. The Small Business Administration guaranteed ninety (90%) percent of this loan, which was also secured by a mortgage on the plant and on three residential properties owned by Donald Creeger, the president and sole shareholder of Creeger, Inc., and his wife, Marjorie Creeger. The Creegers contributed two hundred and forty thousand ($240,000.00) dollars of their own money to the venture and borrowed additional funds from the Centre County Commissioners/Department of Community Affairs, SEDA—Council of Governments, Moshannon Valley Development Fund, and the Phillipsburg Association of Commerce. All such loans were subordinated to the principal loan made by Mid–State Bank.

The plant did not become operational until October 1, 1984 and, being seasonal in nature, closed for the winter months on November 22, 1984. It did not begin producing bricks again until February 15, 1985. Because of the delay in attaining full production, Creeger, Inc. suffered a cash shortage. In March, 1985, the business applied for a line of credit from Mid–State Bank in order to obtain needed working capital. The Bank refused to advance further funds. Donald and Marjorie Creeger then requested that one of their residences be released from the lien of the

mortgage so that it could be sold. The Bank initially refused, but ultimately agreed to do so upon conditions which the Creegers could not meet. When Creeger, Inc. found a new lender who was willing to purchase ninety (90%) percent of Mid–State Bank's loan and make additional advances, Mid–State Bank refused to assign such an interest. On July 8, 1986, the Small Business Administration notified Creeger, Inc. that Mid–State Bank had demanded, and it had made, payment under its loan guarantee. Thereafter, Creeger, Inc. suffered financial collapse.

Creeger, Inc., as well as Donald and Marjorie Creeger, instituted suit against the lenders who had provided the funds with which they had rehabilitated the plant and started production. In Counts I and II of the Complaint, the plaintiffs alleged that Mid–State Bank was liable to them because, although it had not breached any specific provision of the loan agreement, it had failed to deal with the borrowers in good faith. More specifically, it was alleged, Mid–State Bank had failed to deal with plaintiffs in good faith in the following respects:

    (a) Failing to provide [Creeger, Inc.] with a line of credit;

    (b) Establishing a commercially unreasonable method in which [Creeger, Inc.] was required to draw upon borrowed funds in the course of acquiring equipment and repairing [Creeger, Inc.'s] plant;

    (c) Failing to promptly release it's mortgage against Plaintiff Creeger and Plaintiff Marjorie Creeger, [sic] Pittsburgh property to allow additional working capital to be provided to [Creeger, Inc.];

    (d) Failing to cooperate with Plaintiff Creeger and [Creeger, Inc.] in their effort to obtain supplemental financing;

    (e) Over-collateralizing it's loan to [Creeger, Inc.];

    (f) Failing to advise [Creeger, Inc.] and Plaintiff Creeger of it's demand for payment from the SBA on the SBA's guarantee of [Creeger, Inc.] and Plaintiff Creeger's loan with Defendant Bank;

(g) Taking the position that [Creeger, Inc.] was not able to produce good and marketable brick and advising the subordinated lenders of the same when the same was in fact not true.

█ Section 205 of the Restatement (Second) of Contracts suggests that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." A similar requirement has been imposed upon contracts within the Uniform Commercial Code by 13 Pa.C.S. § 1203. The duty of "good faith" has been defined as "[h]onesty in fact in the conduct or transaction concerned." See: 13 Pa.C.S. § 1201; Restatement (Second) of Contracts § 705, Comment a. Where a duty of good faith arises, it arises under the law of contracts, not under the law of torts. *AM/PM Franchise Association v. Atlantic Richfield Co.*, 373 Pa.Super. 572, 579, 542 A.2d 90, 94 (1988). See also: *Clay v. Advanced Computers Applications, Inc.*, 370 Pa.Super. 497, 505 n. 4, 536 A.2d 1375, 1379 n. 4 (1988), *allocatur granted*, 518 Pa. 647, 544 A.2d 959 (1988).

In this Commonwealth the duty of good faith has been recognized in limited situations. Most notably, a duty of good faith has been imposed upon franchisors in their dealings with franchisees. See: *Atlantic Richfield Co. v. Razumic*, 480 Pa. 366, 390 A.2d 736 (1978); *Loos & Dilworth v. Quaker State Oil Refining Corp.*, 347 Pa.Super. 477, 500 A.2d 1155 (1985). It has also been imposed upon the relationship between insurer and insured. See: *Gray v. Nationwide Mutual Ins. Co.*, 422 Pa. 500, 223 A.2d 8 (1966); *Gedeon v. State Farm Ins. Co.*, 410 Pa. 55, 188 A.2d 320 (1963). In *Germantown Manufacturing Co. v. Rawlinson*, 341 Pa.Super. 42, 491 A.2d 138 (1985), the Superior Court implied that there may also be a duty of good faith in connection with an employer's attempt to recoup theft losses from the wife of an employee who was responsible for the thefts. See also: *Baker v. Lafayette College*, 350 Pa.Super. 68, 504 A.2d 247 (1986) (employer had limited

obligation to act in good faith in reviewing professional teacher's performance).

Conversely, the Supreme Court of Pennsylvania has refused to impose a duty of good faith which would modify or defeat the legal rights of a creditor. *Heights v. Citizens National Bank*, 463 Pa. 48, 342 A.2d 738 (1975). Other courts have also refused to apply a duty of good faith to alter or defeat the rights of a creditor which have been granted by law or contract. Thus, in *Layne v. Fort Carson National Bank*, 655 P.2d 856 (Colo.App.1982), the Colorado Court of Appeals held that it was not a breach of the requirement of good faith for a secured lender to refuse a borrower's request for consent to sell collateral. And in *Schaller v. Marine National Bank of Neenah*, 131 Wis.2d 389, 388 N.W.2d 645 (1986), the Court of Appeals of Wisconsin held that a bank did not breach a duty of good faith by refusing to honor a customer's overdrafts or notify him before dishonoring them. See also: *Wagner v. Benson*, 101 Cal.App.3d 27, 161 Cal.Rptr. 516 (1980) (not breach of good faith for secured lender to withhold information about management of borrower's investment). But see: *K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752 (6th Cir.1985) (lender had good faith duty to give borrower notice before refusing to advance further funds under financing agreement where established maximum credit limit had not been reached); *Skeels v. Universal C.I.T. Credit Corp.*, 335 F.2d 846 (3rd Cir.1964) (lender violated duty of good faith by repossessing automobiles despite repeated acquiescences in late payments and assurances of additional financing); *First National Bank in Libby v. Twombly*, 689 P.2d 1226 (Mont. 1984) (lender breached duty of good faith by accelerating due date of borrower's loan and exercising offset against borrower's checking account). See generally: Anderson, *Uniform Commercial Code* § 1–203.

■ It seems reasonably clear from the decided cases that a lending institution does not violate a separate duty of good faith by adhering to its agreement with the borrower or by enforcing its legal and contractual rights as a creditor. The duty of good faith imposed upon contracting

parties does not compel a lender to surrender rights which it has been given by statute or by the terms of its contract. Similarly, it cannot be said that a lender has violated a duty of good faith merely because it has negotiated terms of a loan which are favorable to itself. As such, a lender generally is not liable for harm caused to a borrower by refusing to advance additional funds, release collateral, or assist in obtaining additional loans from third persons. A lending institution also is not required to delay attempts to recover from a guarantor after the principal debtor has defaulted. Finally, if the bank in this case falsely represented appellants' financial circumstances to other creditors for the purpose of damaging appellants' ability to continue doing business, appellants may have causes of action in tort for slander, misrepresentation, or interference with existing or prospective contractual relations. There is no need in such cases to create a separate tort for breach of a duty of good faith. See: *AM/PM Franchise Association v. Atlantic Richfield Co., supra.* See also: *Forms, Inc. v. American Standard, Inc.,* 546 F.Supp. 314 (E.D.Pa.1982), *aff'd,* 725 F.2d 667 (1983) (no need for additional remedy where tort of misrepresentation provides adequate remedy); *D'Ambrosio v. Pennsylvania National Mutual Casualty Ins. Co.,* 494 Pa. 501, 431 A.2d 966 (1981) (court refused to recognize separate cause of action for breach of good faith where adequate remedy was provided under Unfair Insurance Practices Act); *Standard Pipeline Coating Co. v. Solomon & Teslovich, Inc.,* 344 Pa.Super. 367, 496 A.2d 840 (1985) (no need for separate tort remedy where alleged breach of contract committed for purpose of driving contracting party out of business).

We conclude, therefore, that appellants failed to state a legally enforceable cause of action against the bank for failure to deal with its borrower in good faith. The trial court did not err when it sustained preliminary objections in the nature of a demurrer and dismissed the complaint.

Affirmed.

TAMILIA, J., files a concurring statement.

38

TAMILIA, Judge, concurring statement:

I concur in the result. While in this case I believe the majority properly held there was no breach of good faith made out in the appellants' complaint, I disagree with the broad holding by the majority that no cause of action exists for a breach of duty to deal with a lender in good faith. As detailed in the majority Opinion, the duty of good faith has been recognized in some situations (franchisors dealing with franchises, *Atlantic Richfield Co. v. Razumic*, 480 Pa. 366, 390 A.2d 736 (1978); *Loos v. Dilworth v. Quaker State Oil Refining Corp.*, 347 Pa.Super. 477, 500 A.2d 1155 (1985)). The fact that the Supreme Court in *Heights v. Citizens National Bank*, 463 Pa. 48, 342 A.2d 738 (1975), refused to alter or defeat the rights of a creditor controlled by a contract does not mean that in a given case the inherent standard of duty of good faith contained in every contract might not support an action for breach of that duty.

For the above reason, I would not foreclose such an action if the facts of the case would merit it in the case of a lender dealing with a creditor.