J-A31024-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ANGINO & ROVNER, PC, KING DRIVE CORP., A LA CARTE ENTERPRISES, RICHARD C. ANGINO & ALICE K. ANGINO | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| SANTANDER BANK, N.A., WEIR PARTNERS, LLP, AND CUSHMAN & WAKEFIELD NATIONAL CORPORATION | No. 489 MDA 2014 |

Appeal from the Order Entered February 19, 2014
In the Court of Common Pleas of Berks County
Civil Division at No(s): 13-1563

BEFORE:  BOWES, J., OTT, J., and STABILE, J.

MEMORANDUM BY OTT, J.:                 **FILED JANUARY 28, 2015**

Angino & Rovner, PC, King Drive Corp., A La Carte Enterprises, Richard

C. Angino & Alice K. Angino (collectively "the Anginos") bring this appeal

from the order entered on February 19, 2014, in the Court of Common Pleas

of Berks County, sustaining the preliminary objections of Santander Bank,

N.A. ("Bank") and Weir and Partners, LLP ("W & P")[1], and dismissing the

---

[1] Weir and Partners, LLP is Bank's counsel.

Anginos' Amended Complaint with prejudice.[2]  In this appeal, the Anginos raise the following questions, which we quote:

1.    Does there exist a duty of good faith and fair dealing in the lender/lendee context in Pennsylvania in certain situations?

2.    Do the factual averments in the Amended Complaint and the supporting documents state a claim of breach of contract under the duty of care and fair dealing in the lender/lendee context under the special situation exception?

3.    Do the factual averments in [the Anginos'] Amended Complaint and the supporting documents evidence state a claim for breach of contract under the reasonable expectations doctrine?

4.    Do the factual averments in [the Anginos'] Amended Complaint and the supporting documents evidence state a claim for breach of contract under the defense of impracticability?

5.    Do the factual averments in [the Anginos'] Amended Complaint and the supporting documents evidence state a claim for breach of contract under waiver and/or estoppel.

_____

[2] On June 25, 2013, the trial court sustained the preliminary objections of defendant, Cushman and Wakefield National Corporation ("Cushman and Wakefield"), and dismissed the complaint against Cushman and Wakefield with prejudice.  After the Anginos took this appeal from the June 25, 2013 and February 19, 2014 orders, Cushman and Wakefield filed an Application to Dismiss Appeal, contending the Anginos had failed to preserve issues as to the June 25, 2013 Order in their Pa.R.A.P. 1925(b) statement.  On October 9, 2014, this Court quashed the Anginos' appeal from the June 25, 2013 Order pursuant to Pa.R.A.P. 1972(a)(5), finding that the Anginos' Pa.R.A.P. 1925(b) statement failed to preserve any issues related to that Order, and dismissed the appeal as to Cushman and Wakefield.  *See* Order, 10/9/2014.

6. Do the factual averments in [the Anginos'] Amended Complaint and the supporting documents state a claim for which relief may be granted with respect to [Bank's] breach of its contract by refusing to renew approximately $730,000 of irrevocable letters of credit which were an integral part of the 2007 Mockingbird/Mockingbird Extended Construction Loan and although renewing the Willow Lake 2005 Letter of Credit of $94,252.10 refusing to honor same?

7. Do the factual averments in [the Anginos'] Amended Complaint and supporting documents state a claim for which relief may be granted with respect to [Bank's] breach of contract by refusing to accept [the Anginos'] option to extend the security agreement with respect to the Mockingbird/Mockingbird Extended Construction Development Loan from 2009 to 2010?[3]

8. Do the facts as pleaded and the supporting exhibits state a claim for which relief may be granted under the tort of civil conspiracy?

9. Do the facts as pleaded and the supporting exhibits state a claim for which relief may be granted under the tort of defamation?

10. Do the facts as pleaded and the supporting exhibit state a claim for which relief may be granted under the tort of fraud?

11. Are [the Anginos'] tort claims not barred by the gist of action doctrine?

---

[3] We note that the Anginos do not present a separate argument in their brief regarding this issue. Therefore, we will not consider it. *See Bolick v. Commonwealth*, 69 A.3d 1267, 1269 (Pa. Super. 2013), *appeal denied,* 84 A.3d 1061 (Pa. 2014) (finding issue waived pursuant to Pa.R.A.P. 2119(a) because appellant failed to present an argument in support of the issue).

The Anginos' Brief, at 5–6. In addition, although not listed in the Statement of Questions Involved, the Anginos' argument section separately addresses the following issue: "Plaintiffs have pleaded sufficient factual claims to set forth a cognizable claim for intentional infliction of emotional distress".[4] *See id.* at 42–43, Argument H. Based upon the following, we affirm.

The Honorable Jeffrey K. Sprecher has ably stated the facts of this case in his Pa.R.A.P. 1925(a) opinion, which we reiterate as follows:

> The following are the procedural facts:
>
> On February 1, 2013, plaintiffs filed their original complaint against Weir & Partners LLP (W & P), Cushman & Wakefield National Corporation (Cushman & Wakefield), and Santander Holdings USA, Inc. (SHUSA), the holding company of Sovereign, now Santander (Bank). All three defendants filed preliminary objections. On May 30, 2013, the parties stipulated to dismiss SHUSA with prejudice as a defendant, that Bank would be added as the proper defendant, and that SHUSA's preliminary objections would continue to be advanced on Bank's behalf. On June 25, 2013, Judge Schmehl sustained the preliminary objections of the three defendants. Cushman & Wakefield was dismissed with prejudice, and plaintiffs were granted leave to file an amended complaint against the remaining defendants.
>
> On July 11, 2013, plaintiffs filed an amended complaint with very similar allegations. W & P and Bank filed preliminary

_____

[4] We note that the Anginos include this issue in the Table of Contents. *See* The Anginos Brief at ii. However, failure to include the issue in the Statement of Questions Involved violates Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."). Nevertheless, we decline to find waiver as "nothing substantially impedes our ability to review appellant[s'] argument[]." *Rock v. Meakem*, 61 A.3d 239, 249 (Pa. Super. 2013), *appeal denied*, 80 A.3d 778 (Pa. 2013).

objections which this court sustained, and this court dismissed with prejudice the complaint against the remaining defendants.

The pertinent facts gleaned from the record are as follows.

Plaintiff, Richard C. Angino, is an attorney. He and his wife, Alice K. Angino, are the sole owners of plaintiffs King Drive Corporation and A La Carte Enterprises. These businesses are for residential land development and the operation of Felicita Resort. Plaintiff, Angino & Rovner, P.C., is Mr. Angino's law firm.

The Anginos are sophisticated borrowers and land developers. From 1971 through 2007, they invested an average of $1 million per year and borrowed $10 million to $12 million per year for a total investment of more than $50 million. Before 2004 they used Wells Fargo for their banking needs. In 2004, they entered into a series of loan transactions with Waypoint Bank, Bank's predecessor, and Bank: (1) a loan made by Waypoint Bank to King Drive on October 29, 2004, in the original principal amount of $1,400,000.00; (2) a loan made by Bank to King Drive on September 2, 2005, in the original principal amount of $94,252.10; (3) a site development loan made by Bank to King Drive on July 3, 2007, in the original principal amount of $2,000,000.00; (4) a mortgage loan made by Bank to King Drive on November 28, 2007, in the original principal amount of $3,500,000.00; (5) a line of credit made by Bank to King Drive on November 28, 2007, in the original principal amount of $750,000.00; and (6) a line of credit made by Bank to A La Carte dated November 28, 2007, in the original principal amount of $750,000.00. The loans contained one, two, and three year maturity dates.

Plaintiffs allege in their amended complaint that from 2004 through 2008, Bank automatically renewed plaintiffs' loans and lines and letters of credit despite plaintiffs' inability to sell the requisite number of lots referenced in the financial documents. In 2007, the residential housing market collapsed, and plaintiffs were unable to sell the lots at the sales pace required in the loan documents. In 2008, plaintiffs wanted to borrow additional funds from Bank but were denied, because the lines were failing to generate the anticipated cash flow. Plaintiffs contend that beginning in 2008, Bank commenced a plan to divest itself of residential loans, lines of credit, and letters of credit by changing its prior practice of waiving compliance with the technical

contract terms, including time and lot sales, and refusing to continue payments under its lines and letters of credit commitments.

By mid-2009, plaintiffs were in default of the loan documents for failing to sell lots at the required sales pace. Bank offered to modify the loans to extend the maturity dates, but plaintiffs refused this offer.

Bank notified plaintiffs on March 24, 201[0], that they were in default of the loans. [On May 5, 2010,] W & P, Bank's counsel, sent plaintiffs a letter advising that the loans were immediately due and payable. On July 14, 2011, Bank entered into a Loan Modification agreement. The Modification extended the maturity dates for the loans, modified the interest rates, and required additional security for the loans. Plaintiffs released all claims against the Bank, its employees, officers, directors, agents, representatives, attorneys, consultants, and advisors. The Modification was negotiated by all of the plaintiffs and their counsel, and defendants.

Plaintiffs were unable to make the required June 30, 2012 principal payment of $500,000.00; therefore, on July 19, 2012, Bank agreed to amend the Loan Modification under the terms of the First Amendment which plaintiffs and their legal counsel approved and executed. This amendment, *inter alia*, reduced the amount of June 30, 2012 principal payment and provided additional time for payment. Under the terms of this amendment, plaintiffs released all claims again against defendants.

Plaintiffs were again unable to make the principal payment due on December 31, 2012. Bank again agreed to amend the loan for a second time. Under the terms of the Second Amendment, plaintiffs again released all claims.

Plaintiffs requested that Bank make payments to them under letters of credit. Bank refused because plaintiffs were not the named beneficiaries and, therefore, not entitled to payment. Furthermore, under the terms of the Loan Modification, no further advances were permitted. Moreover, two of the letters of credit had expired prior to the extension of the Modification agreement and were not renewed.

Plaintiffs amended complaint contains six causes of action, but within each cause of action are several claims. Defendants filed preliminary objections to the amended complaint. After argument and a review of the record, this court sustained defendants' preliminary objections. Plaintiffs did not substantially amend the complaint against these defendants in any salient manner, so this court dismissed the amended complaint against defendants with prejudice. Plaintiffs filed a timely appeal.

…

This court ordered plaintiffs to file a Concise Statement of Errors Complained of on Appeal.  Plaintiffs complied with this directive; however, this court notes that plaintiffs' statement consists of sixteen pages with five attached exhibits, so it is far from concise.  …

Trial Court Opinion, 5/13/2014, at 1−5.

At the outset, we state our standard of review:

The standard of review we apply when reviewing a trial court's order granting preliminary objections in the nature of a *demurrer* is as follows:

> Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.
>
> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Feingold v. Hendrzak*, 15 A.3d 937, 941 (Pa. Super. 2011) (citation omitted).

In the first two issues, the Anginos assert that there exists a duty of good faith and fair dealing in the lender/lendee context in Pennsylvania in certain situations, and that the Amended Complaint states a valid cause of action.

The duty of good faith and fair dealing in Pennsylvania was addressed in *Cable & Assocs. Ins. Agency v. Commercial Nat'l Bank*, 875 A.2d 361 (Pa. Super. 2005):

> In *Creeger Brick & Bldg. Supply, Inc. v. Mid-State Bank and Trust*, 385 Pa. Super. 30, 560 A.2d 151 (Pa. Super. 1989), we explained the legal concept of "good faith" with regard to the law of contracts in the following fashion:
>
>> Section 205 of the Restatement (Second) of Contracts suggests that "every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." A similar requirement has been imposed upon contracts within the Uniform Commercial Code by 13 Pa.C.S. § 1203. The duty of "good faith" has been defined as "honesty in fact in the conduct or transaction concerned." *See*: 13 Pa.C.S. § 1201; Restatement (Second) of Contracts § 205, Comment a. Where a duty of good faith arises, it arises under the law of contracts, not under the law of torts. *AM/PM Franchise Association v. Atlantic Richfield Co.*, 373 Pa. Super. 572, 579, 542 A.2d 90, 94 (1988); [see *also] Clay v. Advanced Computer Applications, Inc.*, 370 Pa. Super. 497, 505 n. 4, 536 A.2d 1375, 1379 n. 4 (1988), *allocatur granted*, 518 Pa. 647, 544 A.2d 959 (1988).
>
> *Creeger*, 560 A.2d at 153.

- 8 -

The courts of this Commonwealth have, in addition to the general contractual concept of "good faith," recognized a duty of "good faith" inherent in certain types of legal relationships, such as insurer and insured. ***Creeger***, 560 A.2d at 153. Such an inherent duty of good faith does ***not*** extend to the lender-borrower relationship. ***Id.***, 560 A.2d at 154. As we explained in ***Creeger***, a lending institution does not violate a separate duty of good faith by adhering to its agreement with the borrower or by enforcing its legal and contractual rights as a creditor. ***Id.***, 560 A.2d at 154. However, a borrower may plead sufficient facts to make out a claim that a lender violated its general duty of "good faith" arising out of the law of contracts. ***See, e.g., Corestates Bank, N.A. v. Cutillo***, 1999 PA Super 14, 723 A.2d 1053 (Pa. Super. 1999). Therefore, the creation of a separate duty of good faith between lender and borrower is unnecessary due to the existence of this "good faith" cause of action sounding in contract, as well as the existence of other causes of action such as fraud, slander, or interference with prospective contractual relations, which sound in tort. ***Creeger***, 560 A.2d at 154.

A party proceeding on the theory that a lender violated its contractual duty of good faith must demonstrate more than the fact that a lender negotiated terms of a loan which are favorable to itself. ***Creeger***, 560 A.2d at 154. Further, the duty of good faith imposed upon contracting parties does not compel a lender to surrender rights granted by statute or conferred to the lender by the terms of the loan contract. ***Id.***, 560 A.2d at 154. As such, a lender generally is not liable for harm caused to a borrower by refusing to advance additional funds, release collateral, or assist in obtaining additional loans from third persons. ***Id.***, 560 A.2d at 154.

***Id.*** at 364.

Here, the trial court rejected the Anginos' claim that the Amended Complaint stated a cause of action for breach of the duty of good faith and fair dealing, stating:

Plaintiffs' third assertion is that the amended complaint is legally sufficient to state a claim for a breach of the duty of good faith and fair dealing. This contention fails and must be

- 9 -

dismissed. Plaintiffs cite cases in which the court held or in *dicta* stated that a duty of good faith and fair dealing can be breached by a party; however, plaintiffs' cases are inapposite to the instant case. Plaintiffs and Bank have a relationship of borrowers and lender. A lending institution does not violate a duty of good faith by adhering to its agreement with the borrower or by enforcing its legal and contractual rights against a creditor. ***Creeger Brick and Building Supply Inc. v. Mid State Bank and Trust Company***, 385 Pa. Super. 30, 560 A.2d 151 (1989). In the case at bar, Bank simply adhered to the parties' agreement and enforced its legal rights as plaintiffs' creditor.

Trial Court Opinion, 5/13/2014, at 7. We agree with the court's analysis.

Moreover, ***Corestates Bank, N.A. v. Cutillo***, 723 A.2d 1053 (Pa. Super. 1999), relied upon by the Anginos, is distinguishable.

In ***Corestates Bank, N.A.***, appellant borrower was sued by lender to collect a debt owed following appellant's default under a loan agreement. The borrower counterclaimed, alleging, *inter alia,* the lender's "failure to deal in good faith." ***Id.*** at 1058. The counterclaim set forth the following averments:

> For an extended period of time, [appellant] dealt with [the Bank] almost exclusively with regard to the financial needs of [appellant] and of [appellant's] various commercial enterprises.
>
> Over the course of 19 years, [appellant] established a relationship with [the Bank] of trust and reliance.
>
> By way of refusing to satisfy numerous outstanding mortgages which were in amounts greatly in excess of the borrowings of [appellant] from [the Bank], and by refusing to advance the $50,000.00 promised by [the Bank] to [appellant] in consideration for the $50,000.00 Mortgage obtained by [the Bank] from [appellant], [the Bank] breached its duty to [appellant] to deal in good faith in the various business transactions entered into by the parties.

- 10 -

*Id.* at 1059. The trial court granted the bank's preliminary objections to the counterclaim. On appeal, a panel of this Court reversed the trial court, stating:

> In Pennsylvania, the duty of good faith has been recognized in limited situations. ***Creeger Brick*** & ***Building Supply, Inc. v. Mid-State Bank*** & ***Trust,*** 385 Pa. Super. 30, 560 A.2d 151 (1989). While a lending institution does not violate a separate duty of good faith by adhering to its agreements with a borrower or enforcing its contractual rights as a creditor, ***see id.*** 560 A.2d at 154, due to the longstanding relationship between the parties in this case, we cannot say that the parties have not, as a matter of law, developed a relationship wherein the Bank owes appellant a duty of good faith.

*Id.* at 1059.

The Anginos claim that the holding in ***Corestates Bank, N.A.*** supports its position that a valid claim exists in this case for breach of the duty of good faith and fair dealing. We disagree and find the Anginos' reliance on ***Corestates Bank, N.A.***, to be misplaced.

In ***Corestates Bank, N.A.***, when the borrower counterclaimed against the lender, the borrower expressly pleaded lender's breach of duty of good faith in failing to perform its oral promise to lend the borrower $50,000, after the lender executed a mortgage in favor of the lender pursuant to the parties' agreement. Such is not the case here.

In the present case, the averments of the Amended Complaint do not establish anything other than Bank's decision to enforce its legal and contractual rights against the Anginos. As such, the Amended Complaint fails to allege the existence of facts and circumstances to support a claim for

- 11 -

breach of the implied covenant of good faith and fair dealing. *See Cable & Assoc. Ins. Agency, supra* at 364 ("[A] lender generally is not liable for harm caused to a borrower by refusing to advance additional funds, release collateral, or assist in obtaining additional loans from third persons."). Accordingly, the trial court properly determined that the Amended Complaint failed to state a claim for a breach of the duty of good faith and fair dealing.

Next, the Anginos claim that the Amended Complaint and referenced documentary exhibits state a theory of recovery for breach of contract under the reasonable expectation doctrine. According to the Anginos:

> The averments in [the Anginos'] Amended Complaint and referenced exhibits clearly provide a theory of recovery based upon the parties' reasonable expectations as detailed in an exchange of communications from 2002 through 2004, including [the Anginos'] submission in 2004 of its long-range plan to develop a green sustainable multi-use community.
>
> The Restatement (Second) of Contracts § 211 standardized agreement provides that in construing and applying a standardized contract, the construction must effectuate the reasonable expectation of the average member of the public who accepts it. It is clear from the averments in the Amended Complaint and the documents attached as exhibits that the reasonable expectations of the parties were to extend beyond the one year maturity dates of lines and letters of credit and two year maturity dates of the documents themselves and even beyond the "pacing" requirements of the documents. The "pacing" requirements of three per year for Willow Lake would require at least four to five years to sell the remaining 13 or 14 lots. The "pacing" requirement for Mockingbird/Mockingbird Extended of five lots per year would also require at least five to six years to sell 28 lots. The $200,000 annual payments toward principal for the $5,000,000 mortgage and two lines of credit necessitated 25 years for total payment of principal.

The Anginos' Brief, at 31-32. This argument is unavailing.

"[A] party may not claim its reasonable expectations are inconsistent with clear contract language." ***Gustine Uniontown Associates, Ltd. ex rel. Gustine Uniontown, Inc. v. Anthony Crane Rental, Inc.***, 892 A.2d 830, 837 (Pa. Super. 2006). Here, the Anginos present a theory of recovery for breach of contract based upon the reasonable expectation doctrine. However, the Anginos present no authority, nor has our research revealed, that a cause of action for breach of contract exists based upon the reasonable expectation doctrine. Accordingly, no relief is due on this claim.

In the next two issues (Issues 4 and 5), the Anginos claim (1) that the Amended Complaint and numerous documentary exhibits establish a theory of recovery for breach of contract under waiver and estoppel, and (2) the Amended Complaint and supporting exhibits state a viable theory of recovery for breach of contract under impracticability and impossibility. However, as the trial court correctly points out, these doctrines are affirmative defenses, not causes of action. ***See*** Trial Court Opinion, 5/13/2014, at 8; Pa.R.C.P. 1030 ("[A]ll affirmative defenses including but not limited to the defenses of … estoppel, … impossibility of performance, … and waiver shall be pleaded in a responsive pleading under the heading "New Matter".). Accordingly, we reject this argument without further discussion.

In the sixth issue, the Anginos argue that the Amended Complaint states a theory of recovery based upon Bank's breach of contract by refusing

to renew irrevocable letters of credit, refusing to honor letters of credit, and interpreting letters of credit erroneously. Specifically, the Anginos rely upon allegations that Bank refused to renew two letters of credit — for Mockingbird/Mockingbird Extended, and although continuing to renew a third letter of credit — for Willow Lake, and refused to reimburse the Anginos for expenses incurred for roads and infrastructure beyond the 2009 maturity date. Here, however, there are no averments that Bank failed to abide by the written terms of the letters of credit. Therefore, our review confirms the Amended Complaint fails to state a cause of action based upon this theory.

In the remaining issues, the Anginos claim that the Amended Complaint sets forth causes of action for the torts of civil conspiracy, defamation, fraud, and intentional infliction of emotional distress. The Anginos also contend that the tort claims are not barred by the gist of the action doctrine.

The trial court has succinctly and properly rejected these arguments. We therefore adopt the trial court's discussion as dispositive of the final five issues raised by the Anginos in this appeal, as follows:

> Plaintiffs next argue that the complaint is legally sufficient to state a claim for civil conspiracy. This contention is without merit and should be dismissed. A civil conspiracy is a combination of two or more persons who engage in an unlawful or criminal act or accomplish a lawful act by unlawful means or for an unlawful purpose. In the instant case, the defendants are the Bank and its attorneys; therefore, there is no conspiracy because it is impossible for a principal and agent to enter into a conspiracy. Even assuming arguendo, that a conspiracy existed

between the defendants, they did nothing illegal or for an unlawful purpose against plaintiffs.

Plaintiffs' next argument is that the complaint was legally sufficient to state a claim for the intentional infliction of emotional distress. This contention fails. Intentional infliction of emotional distress occurs when one, intentionally and recklessly, by extreme and outrageous conduct, causes severe emotional distress to another. This court notes that all plaintiffs assert this action, but businesses are unable to suffer emotional distress. The only allegations to support this claim are that Bank's employees made telephone calls to the individual plaintiffs regarding their failure to make timely loan payments and they made "irresponsible threats of foreclosure." Bank pursued its legal rights and warned plaintiffs of its intent to foreclose due to the lack of payments. Hence, Bank's actions are legal, not irresponsible. If plaintiffs suffered emotional distress, it was the result of their unhappiness over Bank's pursuit of its legal remedies.

Plaintiffs assert that the complaint is legally sufficient to state a claim for fraud. This allegation is meritless. Pa.R.C.P. 1019 states that averments of fraud or mistake must be averred with particularity. Plaintiffs contend only that the defendants committed fraud and misrepresentations pertaining to their position regarding appraisals, obligations, and letters of credit. Plaintiffs do not delineate what was fraudulent or why an action was fraudulent. Plaintiffs do not agree with defendants' appraisals of their properties, but their appraisals do not constitute fraud. For these reasons, this issue should be dismissed.

Plaintiffs submit that the amended complaint is legally sufficient to state a claim for defamation. This complaint is a frippery. Plaintiffs do not state what statements were defamatory. Moreover, defendants did not publish any statements to the public. The public's knowledge gained through the publicity of a legal proceeding is not defamation.

Plaintiffs' [next] contention is that their tort claims are not barred by the gist of the action doctrine. The gist of the action doctrine precludes tort claims that are collateral to claims sounding in contract. The doctrine is designed to maintain the conceptual distinction between breach of contract claims and tort

claims and, as a practical matter, precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims. ***The Brickman Group, LTD. v. CGU Insurance Company***, 865 A.2d 918 (Pa. Super. 2004). If plaintiffs had pled legitimate intentional tort claims, perhaps they would have withstood the gist of the doctrine test; however, this court dismissed plaintiffs' tort claims because they were legally deficient. For this reason this assertion fails.

Trial Court Opinion, 5/13/2014, at 9–10.[5]

_____

[5] We simply add that the Pennsylvania Supreme Court recently addressed the "gist of the action" doctrine in ***Bruno v. Erie Ins. Co.***, ___ A.3d ___ [2014 PA LEXIS 3319] (Pa. December 15, 2014). The ***Bruno*** Court held that the "gist of the action" doctrine did not bar the plaintiffs'-insureds' negligence claim against its insurer for false assurances made by the insurer's adjuster and the engineer regarding mold discovered in the insureds' home. The Supreme Court explained:

> [T]he mere existence of a contract between two parties does not, *ipso facto*, classify a claim by a contracting party for injury or loss suffered as the result of actions of the other party in performing the contract as one for breach of contract. Indeed, our Court has long recognized that a party to a contract may be found liable in tort for negligently performing contractual obligations and thereby causing injury or other harm to another contracting party ….

> Consequently, a negligence claim based on the actions of a contracting party in performing contractual obligations is not viewed as an action on the underlying contract itself, since it is not founded on the breach of any of the specific executory promises which comprise the contract. Instead, the contract is regarded merely as the vehicle, or mechanism, which established the relationship between the parties, during which the tort of negligence was committed.

***Id.*** at *57–*58.

We note that in ***Bruno***, the issue of the "gist of the action" doctrine was decided prior to the issue regarding whether the negligence claim was

*(Footnote Continued Next Page)*

Having considered the arguments raised by the Anginos, and finding that none presents a basis upon which to disturb the decision of the trial court, we affirm the order that dismissed the Anginos' Amended Complaint with prejudice.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/28/2015

---

*(Footnote Continued)* ——————

otherwise legally cognizable, and therefore  the Pennsylvania Supreme Court remanded the case to this Court to fully consider the parties' arguments on that issue.  ***See id.*** at *61-*62.

Here, the Anginos argue that their tort claims are not barred by the "gist of the action" doctrine because the claims arose from conduct separate and apart from the subject contracts.  The Anginos' argument assumes the legally sufficiency of their intentional tort claims. However, we have concluded that the trial court properly sustained the demurrers and dismissed the intentional tort claims. It follows, as the trial court determined, that the Anginos' argument regarding the "gist of the action" doctrine is moot.