NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 16-1596

———————————

RICHARD C. ANGINO husband; ALICE K. ANGINO wife

v.

WELLS FARGO BANK, N.A.; WELLS FARGO HOME MORTGAGE

Richard Angino; Alice Angino,

Appellants

———————————

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 1-15-cv-00418)
District Judge: Honorable Christopher C. Conner

———————————

Submitted Under Third Circuit LAR 34.1(a)
November 15, 2016

Before: AMBRO, CHAGARES, and FUENTES, Circuit Judges

(Opinion filed:  December 7, 2016)

———————————

OPINION[*]

———————————

AMBRO, Circuit Judge

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Richard and Alice Angino appeal the District Court's dismissal of their breach of contract claims against Appellee Wells Fargo. For the reasons that follow, we affirm.

## I.     Background

In 2002, the Anginos renegotiated the terms of an existing $708,000 mortgage on their property with First Union, the predecessor in interest to Wells Fargo. Under the terms of the new mortgage agreement, the Anginos would receive a loan equal to the appraised value of their home—$2,310,000—with interest-only payments for the first ten years. They allege that when they negotiated their mortgage with First Union it induced them to enter high risk mortgage agreements so that it could "make substantial immediate profit." App. 59. Although the Anginos allege that they were victims of predatory lending, the record reflects that they entered into this loan agreement as part of a calculated investment decision: when the bank disbursed the loan, they invested in their residential development business and likely expected to continue to make profits.

The Anginos' financial plan did not pan out as they hoped. Many of their stock and real estate investments lost substantial value when the markets plummeted between 2007 and 2009, and they were called to pay on commercial loans and mortgages.

In August 2013, Wells Fargo notified the Anginos that their mortgage payments were past due. They allege they first sought assistance in making payments when Alice Angino called the bank in November 2013. Throughout 2014 the Anginos continued to request loan modifications in the form of a repayment plan under the Home Assistance

2

Mortgage Program (HAMP)[1] and any other relief that the bank might provide. Wells Fargo determined the Anginos were not eligible for the HAMP because the unpaid balance of their loan exceeded the program limit. They requested that Wells Fargo provide them an alternative repayment plan. In this effort, they submitted an application for the Borrower Counseling Program, the HAMP program packet and financial information in response to Wells Fargo's requests. Wells Fargo responded with letters recognizing receipt of the documentation and informing the Anginos that it would review their eligibility for any mortgage assistance options. However, it ultimately chose not to offer them a loan modification plan.

In February 2015, the Anginos filed suit in District Court based on their inability to obtain a loan modification from Wells Fargo. They raised three claims under contract law: two alleged Wells Fargo breached a contract with them and one asserted promissory estoppel. They also alleged violations of state and federal consumer protection laws.[2] In addition, they asserted various grounds for relief under state tort law.

Wells Fargo moved to dismiss the complaint for failure to state a claim on which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). The Magistrate Judge issued a Report and Recommendation advising the Court to dismiss the Anginos'

---

[1] The HAMP is "a federal initiative that incentivizes lenders and loan servicers to offer loan modifications to eligible homeowners." *See Young v. Wells Fargo Bank, N.A.,* 717 F.3d 224, 228 (1st Cir. 2013) (describing the HAMP program and implementing regulations).

[2] The Anginos brought claims under the Pennsylvania's Unfair Trade Protection and Consumer Protection Law (UTPCPL), the Real Estate Settlement Procedures Act (RESPA), and the Fair Credit Reporting Act (FCRA).

claims. The District Court adopted the Report and Recommendation and granted the motion to dismiss.[3] The Anginos appeal.

## II. Jurisdiction and Standard of Review

The District Court had subject matter jurisdiction under 28 U.S.C. § 1332. We have jurisdiction over this appeal per 28 U.S.C. § 1291. On motions to dismiss, "we accept as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them, and we affirm the order of dismissal only if the pleading does not plausibly suggest an entitlement to relief." *Fellner v. Tri-Union Seafoods, L.L.C.*, 539 F.3d 237, 242 (3d Cir. 2008).

The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). A claim meets the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations need only "raise a right to relief above the

---

[3] The Magistrate Judge recommended the claim for violations of UTPCL be dismissed without prejudice so that the Anginos could re-plead with facts that might satisfy the elements of their claim. He also recommended that the Court deny the motion to dismiss the RESPA claim and order the plaintiffs to file a more definite statement under Federal Rule of Civil Procedure 12(e). The Anginos filed a response to the Report and Recommendation requesting that the Court dismiss all claims with prejudice so they could appeal to our Court. In their appeal, the Anginos no longer raise the UTPCL and RESPA claims. In their reply brief they also drop their FCRA and state tort law claims.

4

speculative level," *Twombly*, 550 U.S. at 555, though "we are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### III.    Analysis

The Anginos allege that the District Court erred in granting the motion to dismiss on their breach of contract claims. On appeal, they reassert the arguments they raised before the Magistrate Judge. First, they argue that Wells Fargo breached their 2002 loan agreement when it refused to provide them an option to refinance their mortgage. They claim that the agreement incorporated the expectation that refinancing would be provided if necessary when the principal on the loan came due. Second, the Anginos contend that Wells Fargo breached an implied contract the parties formed between 2013 and 2014 when they submitted materials to support their request for modification despite not meeting eligibility requirements for the HAMP. They further allege that Wells Fargo breached a duty of good faith and fair dealing in refusing to renegotiate their debts. Because the facts the Anginos alleged do not establish the necessary elements for breach of contract, we affirm.

### A.    *2002 Loan Agreement*

As a federal court exercising diversity jurisdiction in this case, we apply the substantive law of Pennsylvania to this dispute. *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000). To state a claim for breach of contract under Pennsylvania law, a plaintiff must plead the following elements: (1) the existence of a contract, including its

5

essential terms; (2) the defendant's breach of duty imposed by the terms; and (3) actual loss or injury as a direct result of the breach. *See Ware v. Rodale Press, Inc.,* 322 F.3d 218, 225 (3d Cir. 2003) (citing *CoreStates Bank, N.A. v. Cutillo,* 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). In resolving contract disputes, courts are to "ascertain and give effect to the intent of the contracting parties." *Great Am. Ins. Co. v. Norwin Sch. Dist.*, 544 F.3d 229, 243 (3d Cir. 2008) (quoting *Murphy v. Duquesne Univ.,* 777 A.2d 418 (Pa. 2001)). That intent is embodied in the written terms of the contract itself. *Id.*

Here the note and the mortgage contain the written terms of the 2002 agreement between the Anginos and Wells Fargo. The Magistrate Judge correctly concluded that neither the note nor the mortgage contained terms granting the Anginos the right to refinance when the principal balance on the note came due. *Angino v. Wells Fargo Bank, N.A.*, No. 1:15-CV-418, 2016 WL 787652, at *6 (M.D. Pa. Feb. 19, 2016). On appeal, they point to no provision in the note or the mortgage providing such a right. Instead, they would have us infer this right from what they allege were the reasonable expectations of the parties at the time they entered into the contract. However, a court may only consider evidence outside the contract's words (called parol evidence) to determine the intent of the parties where the contract is ambiguous. *Great Am. Ins. Co.*, 544 F.3d at 243. "When a written contract is clear and unequivocal, its meaning must be determined by its contents alone." *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1010 (3d Cir. 1980) (quoting *E. Crossroads Ctr., Inc. v. Mellon-Stuart Co.*, 205 A.2d 865, 866 (Pa. 1965)); *Mace v. Atl. Ref. & Mktg. Corp.*, 785 A.2d 491, 496 (Pa. 2001). Here the written agreement is unambiguous; hence we cannot read in its silence

6

an additional legal obligation to offer a refinancing option when the principal payments came due.

Where the contract by its terms does not create a right to modify loans, Pennsylvania law does not confer on the Anginos any independent right to receive a loan modification. *See e.g.*, *U.S. Bank v. Cox*, No. 2008-00848, 2010 WL 1988393 (Pa. Com. Pl. Mar. 4, 2010) ("[P]laintiff has no obligation to modify defendants' mortgage. Plaintiff is contractually entitled to seek foreclosure, which is what plaintiff chose to do.").

The Anginos also cannot rely on any independent duty of good faith under the Restatements of Contracts to hold Wells Fargo liable because under Pennsylvania law good faith is simply "an interpretive tool to determine the parties' justifiable expectations in the context of a breach of contract action, [and] that duty. . . cannot be used to override an express contractual term." *Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 91 (3d Cir. 2000). While Wells Fargo had a duty to act in good faith in complying with the terms of the 2002 contract, this duty did not impose an obligation to surrender its legal and contractual rights. *See Creeger Brick & Bldg. Supply Inc. v. Mid State Bank & Trust Co.*, 560 A.2d 151, 154 (Pa. Super. Ct. 1989) ("The duty of good faith imposed upon contracting parties does not compel a lender to surrender rights which it has been given by statute or by the terms of its contract. Similarly, it cannot be said that a lender has violated a duty of good faith merely because it has negotiated terms of a loan which are favorable to itself."). The contract by its terms granted Wells Fargo the right to collect from the borrower in case of default, and the duty of good faith did not

7

require it to surrender this right. In this context, the Anginos have not alleged a valid claim for breach of contract based on the 2002 loan agreement.

### B. *Breach of Implied Contract to Modify the Loan*

The Anginos' claim that Wells Fargo breached a subsequent loan modification agreement likewise cannot survive the motion to dismiss because the facts pled do not establish that Wells Fargo made a legally enforceable promise to modify the terms of the mortgage between 2013 and 2014. To provide the basis for a claim of breach, the Anginos would need to state sufficient facts to conclude that a contract existed between the parties. *See Ware*, 322 F.3d at 225. The record reflects that the Anginos submitted letters asking Wells Fargo to reconsider the terms of their mortgage and it sent back requests for further financial information from the Anginos. They followed up with the requested documentation and continued to seek assistance from the bank. However, requests for more information alone do not create an enforceable right. In none of the documents attached to the complaint does Wells Fargo promise a loan modification. Thus there is no enforceable promise to modify the loan.

The Anginos ask us to read an implied right to a loan modification because Congress enacted legislation establishing the HAMP and other federal programs to assist borrowers and homeowners. They argue that, among other things, the HAMP "demanded that banks modify loan terms in the residential housing market" and that Wells Fargo "breached its contract or implied contract when they failed to comply with HAMP and [Wells Fargo's] offers to help by demanding and re-demanding the same or

8

similar documents and failing to timely respond." Appellants' Br. at 26. Yet they do not identify any provisions of the HAMP that Wells Fargo violated.

Absent a violation of express provisions of the HAMP, the Anginos rely on language in Wells Fargo's communications where it states it would help them look into other options to avoid foreclosure; they read those statements as recognition that the HAMP implies a duty to provide refinancing. However, the HAMP itself does not provide a private right of action. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 559 n.4 (7th Cir. 2012).[4]

The Anginos are correct in asserting that some circuit courts have held that failing to comply with the terms of a temporary payment plan under the HAMP may form the basis of a breach-of-contract claim under state law. *See id.* at 555, 556 (concluding that the temporary payment plan between the plaintiff and Wells Fargo was a contract with terms "clear and definite enough to support [a] breach of contract theory" under Illinois state law and that the HAMP did not preempt this "otherwise viable" state-law claim); *see also Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 234-36 (1st Cir. 2013) (holding that mortgagor stated a claim under Massachusetts contract law based on servicer' s alleged failure to offer a permanent modification agreement after completion of the temporary

---

[4] *See* 12 U.S.C. § 5219 (codifying the Emergency Economic Stabilization Act, P.L. 110–343, 122 Stat. 3765, which required the Secretary of the Treasury to "implement a plan that seeks to maximize assistance for homeowners and ... encourage the servicers of the underlying mortgages ... to take advantage of ... available programs to minimize foreclosures" and to "use loan guarantees and credit enhancements to facilitate loan modifications to prevent avoidable foreclosures"); U.S. Dep't of the Treasury, Home Affordable Modification Program Supplemental Directive 09–01 (Apr. 6, 2009) (stating the governing regulations for the HAMP program enacted pursuant to the Secretary's authority under the above statute).

9

payment plan where the servicer of the plan promised to modify at the conclusion of the trial period if the borrower complied with the payment schedule); *Corvello v. Wells Fargo Bank, N.A.*, 728 F.3d 878, 881-885 (9th Cir. 2013) (holding that mortgagor stated a claim based on failure to offer a permanent loan modification where servicer agreed to offer a permanent modification in the temporary payment plan if the borrower complied with the terms of the agreement through the trial period). However, in each of those cases the existence of a temporary payment plan provided the source of the contractual rights and obligations between the parties.

It appears that the Anginos never entered into such an agreement with Wells Fargo. Instead, it ultimately concluded that the Anginos were not eligible for the relief they sought because the value of their unpaid loan exceeded the HAMP's limit. In other words, the parties never formed a contract to modify the terms of the mortgage per the HAMP regulations. As noted above, requests for information are not a contract where the requests never lead to a loan modification agreement. Without the existence of a contract to modify the loan, Wells Fargo cannot be in breach of a contractual duty of good faith. *Creeger Brick & Bldg. Supply Inc.*, 560 A.2d at 154.

While we can understand the Anginos' frustration with Wells Fargo given that they complied with the bank's request for documentation and yet received no relief, it had no duty to offer that relief under the 2002 loan agreement and made no subsequent contract between 2013 and 2014 to alter the terms of that agreement. Thus we must affirm.