J-A27024-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| MARK A. REARICK, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| ELDERTON STATE BANK, | |
| Appellee | No. 1769 WDA 2014 |

Appeal from the Order Entered October 24, 2014
In the Court of Common Pleas of Armstrong County
Civil Division at No(s): 1615-2012

| MARK A. REARICK, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| ELDERTON STATE BANK, | |
| Appellee | No. 1770 WDA 2014 |

Appeal from the Order Entered September 24, 2014
In the Court of Common Pleas of Armstrong County
Civil Division at No(s): 1615-2012

BEFORE:  BOWES, OLSON & STABILE, JJ.

MEMORANDUM BY OLSON, J.:                **FILED NOVEMBER 19, 2015**

Appellant, Mark A. Rearick, appeals from the orders entered on September 24, 2014 and October 24, 2014, sustaining preliminary objections complaint filed by Elderton State Bank (ESB) and dismissing Appellant's complaint.  Upon review, we affirm.

We briefly set forth the facts and procedural history of this case as follows.[1] This case concerns the development of a commercial real estate venture, generally referred to as the Saltwork Project, in Elderton, Pennsylvania. In 2006, Appellant secured a $205,000.00 loan from ESB, secured by the property and guaranteed by Appellant. In July 2007, ESB loaned Appellant an additional $443,000.00 to begin construction. Appellant and ESB agreed to expand the Saltwork Project from approximately 11,000 square feet of rental space to just under 16,000 square feet. In January 2008, ESB agreed to lend Appellant a total of $1,200,000.00 and Appellant secured the loan with several unrelated residential properties. Appellant transferred these properties to ESB via deeds in lieu of foreclosure.[2] By the end of 2008, the Saltwork Project was two-thirds completed when Appellant requested another $1,000,000.00 to finish construction. ESB would not lend additional funds because Appellant had received the bank's maximum credit limit. In October 2008, ESB recommended an investor, Tom Smith, to Appellant. Smith loaned Appellant $875,000.00 and the Saltwork Project was completed.

_____

[1] A more detailed account of this case may be found in this Court's prior memorandum filed on July 23, 2014. *See Rearick v. Elderton State Bank*, 2014 Pa. Super. 157.
[2] Appellant owned another residential property that he also used to secure the loans for the Saltwork Project. However, this property was not transferred through deeds in lieu of foreclosure. As discussed *infra*, ESB later filed a complaint against Appellant to foreclosure on this property.

In September 2009, Appellant defaulted on his loans citing poor economic conditions and low rental rates. Prior to default, however, on June 1, 2009, ESB executed the deeds in lieu of foreclosure on the residential properties used by Appellant to secure the Saltwork Project loan. In October 2010, Smith purchased the Saltwork Project at auction for $450,000.00; the Saltwork Project was appraised at approximately $1,450,000.00. Thereafter, in January 2011, ESB filed an action in mortgage foreclosure on the residential property owned by Appellant, used to secure the ESB loan, which was not one of the properties transferred through deeds in lieu of foreclosure. In June 2012, the trial court granted summary judgment for ESB in the mortgage foreclosure action. Appellant did not appeal that decision.

On October 24, 2012, Appellant filed a complaint against ESB, alleging claims for breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, alter ego, and negligence. On December 13, 2012, ESB filed preliminary objections to the complaint. In particular, ESB demurred based on *res judicata* on the theory that Appellant should have raised his claims in the earlier foreclosure action. The trial court agreed and sustained ESB's preliminary objection on *res judicata* grounds, concluding that the substance of Appellant's claims could, and therefore should, have been raised in the earlier foreclosure action. The trial court dismissed ESB's remaining preliminary objections as moot. On appeal, after a lengthy discussion regarding permissive counterclaims in a mortgage foreclosure

action, we remanded the matter for the trial court to rule on Appellant's remaining preliminary objections or to allow Appellant to amend his complaint.

On September 24, 2014, by order and accompanying opinion, the trial court sustained ESB's remaining preliminary objections and dismissed Appellant's complaint. On October 14, 2014, without leave of court, Appellant filed an amended complaint. He then filed a motion for leave of court and an amended complaint on October 24, 2014. The trial court entered an order on October 24, 2014 denying Appellant's request for leave to file an amended complaint. This timely appeal followed.[3]

On appeal, Appellant presents the following issues for our review:

1. Whether the trial court erred when it, after sustaining ESB's preliminary objections and dismissing [Appellant's]

_____

[3] On October 24, 2014, Appellant filed a notice of appeal from the order entered on September 24, 2014 granting ESB's preliminary objections and dismissing Appellant's complaint. On that same date, Appellant also filed a notice of appeal from the order entered on October 24, 2014, denying Appellant's motion to amend his complaint. On October 27, 2014, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) for both matters. On November 14, 2014, Appellant filed separate Rule 1925(b) statements. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on December 11, 2014. In that opinion, the trial court addressed the issues pertaining to Appellant's request to amend his complaint and relied upon its earlier decision, issued on September 24, 2014, for its rationale in sustaining preliminary objections and dismissing Appellant's complaint. Appellant terms the instant proceedings as "consolidated appeals." In fact, Appellant simply challenges two separate orders in the same case. Accordingly, we refer to these proceedings as a single appeal.

[c]omplaint, did not allow [Appellant] to amend the [c]omplaint.

2. Whether the trial court erred when it denied [Appellant's] request to file an amended complaint.

3. Whether in the course of disposing of ESB's preliminary objections to count I of [Appellant's] [c]omplaint, the trial court erred when it determined that [Appellant] failed to plead facts sufficient to establish that ESB owed [Appellant] a duty of good faith and fair dealing.

4. Whether in the course of disposing of ESB's preliminary objections to count I of [Appellant's] [c]omplaint, the trial court erred when it determined that [Appellant] failed to plead facts sufficient to establish that ESB could have breached a duty of good faith and fair dealing that it owed to [Appellant].

5. Whether in the course of disposing of ESB's preliminary objections to count II of [Appellant's] [c]omplaint, the trial court erred when it determined that [Appellant] failed to plead facts sufficient to establish that ESB owed [Appellant] a fiduciary duty.

6. Whether in the course of disposing of ESB's preliminary objections to count II of [Appellant's] [c]omplaint, the trial court erred when it determined that for [Appellant] to advance a cause of action for breach of fiduciary duty, [Appellant] must plead facts sufficient to prove that Thomas Smith was ESB's agent, expressly or implicitly authorized to make decisions and take actions binding on ESB.

7. Whether in the course of disposing of ESB's preliminary objections to count II of [Appellant's] [c]omplaint, the trial court erred when it determined that [Appellant] failed to plead facts sufficient to establish that Thomas Smith was ESB's agent, expressly or implicitly authorized to make decisions and take actions binding on ESB.

8. Whether in the course of disposing of ESB's preliminary objections to count III of [Appellant's] [c]omplaint, the

trial court erred in determining that the *alter ego* theory of liability is inapplicable to this case.

9. Whether in the course of disposing of ESB's preliminary objection to count III of [Appellant's] [c]omplaint, the trial court erred in determining that [Appellant] did not plead facts sufficient to establish a *prima facie* case for *alter ego* liability.

10. Whether in the course of disposing of ESB's preliminary objections to count IV of [Appellant's] [c]omplaint, the trial court erred in determining that [Appellant's] claim for negligence is barred by the economic loss doctrine.

11. Whether in the course of disposing of ESB's preliminary objections to count IV of [Appellant's] [c]omplaint, the trial court erred in determining that [Appellant] did not plead facts sufficient to establish a *prima facie* case for negligence.

Appellant's Brief at 4-5.

Our review of a challenge to a trial court's decision to sustain preliminary objections is guided by the following standard:

> Our standard of review of an order of the trial court overruling or [sustaining] preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.
>
> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained,

it should be resolved in favor of overruling the preliminary objections.

***Feingold v. Hendrzak***, 15 A.3d 937, 941 (Pa. Super. 2011) (citation omitted).

We have reviewed the certified record, the parties' briefs, the relevant law, and the trial court's opinion entered on September 24, 2014. That opinion thoroughly and accurately disposes of Appellant's issues regarding ESB's preliminary objections. Thus, we adopt that decision as our own. We briefly recount the trial court's determinations here.

First, the trial court determined Appellant failed to present sufficient allegations of fact to establish a claim for breach of the contractual duty of good faith and fair dealing, relying upon this Court's decisions in ***Creeger Brick & Bldg. Supply Inc. v. Mid-State Bank & Trust Co.***, 560 A.2d 151, 153 (Pa. Super. 1989) and ***Cable & Associates Ins. Agency, Inc. v. Commercial Nat. Bank of Pennsylvania***, 875 A.2d 361, 362 (Pa. Super. 2005). The trial court noted that Appellant did not aver ESB violated the terms of any executed loan documents, made specific misrepresentations, or committed fraud. Moreover, the trial court determined that Appellant, not ESB, decided to expand the Saltwork Project and requested additional funding. Additionally, the trial court opined Appellant failed to set forth facts that gave rise to ESB's independent duty of good faith, based solely upon Appellant's unsubstantiated allegation that his family had done business with ESB for more than 50 years. Thus, the trial court determined Appellant had not set forth a viable claim for breach of the contractual duty of good faith

and fair dealing as a matter of law and sustained ESB's demurrer on this count of Appellant's complaint. We discern no legal error or abuse of discretion.

Next, the trial court examined ESB's preliminary objection to Appellant's breach of fiduciary claim. The trial court determined Appellant failed to present facts showing that ESB directly controlled Appellant's business decisions or managed the funds used to finance the construction of the Saltwork Project. It further concluded Appellant failed to plead facts sufficient to establish an agency relationship between ESB and Smith. Instead, Appellant only alleged that Smith acted as an independent investor who rendered opinions regarding construction and possible tenants. The trial court found there was no indication that ESB or Smith managed the daily operations of the Saltwork Project. Thus, the trial court sustained ESB's demurrer to Appellant's breach of fiduciary claim. Again, we discern no error of law or abuse of discretion.

Regarding negligence, the trial court concluded Appellant's claim was barred by the economic loss doctrine, because no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage. Here, Appellant's alleged damages included only the loss of his economic investment in property. Moreover, citing our decision on remand, the trial court held that Appellant's claim that ESB frivolously sold off Appellant's properties, or that Smith subsequently acquired properties improperly, should have been raised during the

mortgage foreclosure action. Thus, the trial court determined Appellant's negligence claim was barred by the economic loss doctrine. We agree.

Finally, with regard to Appellant's alter ego claim, the trial court found that the claim was largely duplicative of Appellant's fiduciary duty claim. Moreover, it noted the alter ego theory is a means of piercing the corporate veil and assessing liability for the acts of a corporation against an equity holder in the corporation. The trial court opined that there were no allegations that Appellant or the Saltwork Project were themselves corporate entities or that Appellant claimed that ESB shareholders were responsible for his damages. Thus, the trial court sustained ESB's preliminary objection in the nature of a demurrer to Appellant's claim under the alter ego theory of liability. Again, we discern no abuse of discretion or error of law.

We turn, now, to Appellant's claims regarding the trial court's denial of his request to file an amended complaint. Recently, our Court has stated:

> Even where a trial court sustains preliminary objections on their merits, it is generally an abuse of discretion to dismiss a complaint without leave to amend. There may, of course, be cases where it is clear that amendment is impossible and where to extend leave to amend would be futile.... However, the right to amend should not be withheld where there is some reasonable possibility that amendment can be accomplished successfully. In the event a demurrer is sustained because a complaint is defective in stating a cause of action, if it is evident that the pleading can be cured by amendment, a court may not enter a final judgment, but must give the pleader an opportunity to file an amended pleading....
>
> Nevertheless, a defective pleading that cannot be cured by amendment is appropriately dismissed upon a demurrer.

- 9 -

*Juszczyszyn v. Taiwo*, 113 A.3d 853, 856 (Pa. Super. 2015) (internal citations omitted).

Here, in its December 11, 2014 opinion, the trial court determined Appellant was not entitled to amend his complaint. First, the trial court deduced that Appellant did not request leave of court prior to filing his first amended complaint. Pursuant to Pa.R.Civ.P. 1028(e), the trial court concluded that Appellant failed to file a motion for leave within 20 days of the order dismissing his complaint and, thus, his request to amend was untimely. The trial court further declared Appellant never presented a proper and timely filed motion for leave. Instead, without advance notice, Appellant presented a single motion to file the prior amended complaint at the same time he filed a second amended complaint. Finally, and most importantly, the trial court stated that on October 24, 2014, at motions court, Appellant's counsel specifically requested, with Appellant's express written consent, that the trial court deny the motion to amend. Thus, the trial court concluded that Appellant could hardly complain about the entry of an order that was requested and to which he consented. In sum, the trial court concluded Appellant's motion to amend his complaint was untimely, procedurally defective, and denied at Appellant's request with his express consent. Upon review, we agree.

Therefore, we conclude there has been no error or abuse of discretion in this case and that the trial court's September 24, 2014 and December 11, 2014 opinions meticulously, thoroughly, and accurately dispose of

Appellant's issues on appeal. Therefore, we affirm on the basis of the trial court's opinions and adopt them as our own. Because we have adopted the trial court's opinions, we direct the parties to include the trial court's opinions in all future filings relating to our examination of the merits of this appeal, as expressed herein.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/19/2015

IN THE COURT OF COMMON PLEAS OF ARMSTRONG COUNTY, PENNSYLVANIA

MARK A. REARICK,                 )
            Plaintiff,           )
                                 )
    vs.                          )
                                 )   No. 2012-1615-CIVIL
ELDERTON STATE BANK,             )
            Defendant.           )

## MEMORANDUM

**Panchik, J.**

Before the Court for disposition are the Preliminary Objections filed by Defendant Elderton State Bank ("Defendant" or "ESB") to the Complaint filed by Plaintiff Mark A. Rearick ("Plaintiff" or "Rearick"). The Court originally held argument on the preliminary objections on February 28, 2013. We then entered a Memorandum and Order on May 9, 2013, sustaining ESB's preliminary objection based on the doctrine of *res judicata* and dismissing the remaining objections as moot. Rearick appealed the Court's decision to the Superior Court, which reversed the Court's decision on the *res judicata* issue. The Superior Court directed that on remand this Court could either rule on ESB's remaining preliminary objections or permit Rearick to amend his complaint. Pursuant to the Superior Court's directives, we herein rule on ESB's remaining objections.

Rearick v. Elderton State Bank
No. 2012-1615-Civil

## I.  STANDARD OF REVIEW

In deciding preliminary objections in the nature of a demurrer, we determine the legal sufficiency of the complaint. *Feingold v. Hendrzak*, 15 A.3d 937, 941 (Pa. Super. Ct. 2011). We accept as true all well-pleaded material facts set forth in the complaint as well as all inferences reasonably induced therefrom. However, we need not accept as true conclusions of law, unwarranted inferences, allegations, or expressions of opinion. *Bayada Nurses, Inc. v. Comm., Dep't of Labor and Industry*, 8 A.3d 866, 884 (Pa. 2010). Preliminary objections should be sustained "only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief." *Feingold*, 15 A.3d at 941. We consider the preliminary objections mindful of a complaint's purpose: to "apprise the defendant of the nature and extent of the plaintiff's claim so that the defendant has notice of what the plaintiff intends to prove at trial and may prepare to meet such proof with his own evidence." *Weiss v. Equibank*, 460 A.2d 271, 274-75 (Pa. Super. Ct. 1983). Any doubts regarding whether a demurrer should be sustained should be resolved in favor of overruling it. *Employers Ins. of Wausau v. PennDOT*, 865 A.2d 825, 830 n. 5 (Pa. 2005).

2

Rearick v. Elderton State Bank
No. 2012-1615-Civil

## II. RELEVANT FACTUAL ALLEGATIONS

We accept as true the following material allegations of fact pled in Rearick's complaint. We do not accept as true any legal conclusions, unwarranted inferences, or expressions of opinion.

In 2006, Rearick developed a plan to purchase an abandoned commercial building in Elderton, Pennsylvania, and renovate it to house retail and office space. In the Fall of 2006, Rearick approached ESB, with whom his family had a long-standing relationship of more than fifty years, to secure funding for what came to be known as the "Saltwork Project." On July 25, 2006, Rearick requested a $205,000.000 loan from ESB to purchase the Saltwork Project property and to begin preparation work for the development of the site. Rearick asked ESB whether it was interested in participating in the United States Department of Agriculture's Business and Industry Guaranteed Loan Program ("Loan Program"), pursuant to which the Department of Agriculture would guarantee 80 percent of a bank's investment in an approved development project. Rearick believed that ESB's participation in the program would benefit all parties involved. ESB was not interested in the Loan Program. Instead, ESB made a loan to Rearick in the amount of $205,000.00, secured by the Saltwork Project property and by a guaranty from Rearick.

3

Rearick v. Elderton State Bank
No. 2012-1615-Civil

On July 17, 2007, ESB loaned Rearick an additional $443,000.00 to begin construction at the Saltwork Project, which at that point totaled 10,927 square feet. ESB previously had approved the construction plans. Rearick then, with ESB's approval, expanded the Saltwork Project from 10,927 square feet first to 15,383 square feet and ultimately to 15,973 square feet. To cover the construction costs for the increased space, in January 2008, ESB increased the loan to Rearick to a total of $1.2 million. Rearick secured the additional debt using several of residential properties that were not part of the Saltwork Project. By late 2008, the Saltwork Project was only 66 percent completed, and Rearick needed another $1 million to complete construction. However, ESB informed Rearick that it could not increase the loan any further because it had reached its internal limit for credit that could be extended to any single borrower. ESB informed Rearick that he would have to secure funding from another source.

On October 16, 2008, at ESB's request, an individual named Tom Smith became an investor in the Saltwork Project. At the time, Smith was an ESB shareholder. ESB had approached him earlier about investing in the Project, but he had not been interested. This time, however, he agreed. Smith loaned Rearick a total of $875,000.00 that ESB agreed would be paid back in full. Using these funds, the Saltwork Project was

4

completed. During the final planning and construction of the Project, Smith controlled the Project in that he made decisions relating to construction, build-out, and tenant selection. ESB secured a guaranty from the Department of Agriculture's Loan Program to ensure that Smith's investment would be repaid. The guarantee amounted to 90 percent (90%) of the total debt used to fund the Saltwork Project.

On May 8, 2009, Rearick and his real estate company, MKR Rentals, Inc., executed loan documents pursuant to which they agreed to pay ESB the principal sum of $3,415,000.00, secured by the Saltwork Project and the additional properties owned by Rearick. Because of its guaranty from the Loan Program, ESB's outstanding risk exposure regarding the debt was approximately $340,000.00, or about 10 percent of Rearick's total debt. In September 2009, amid slow economic conditions and lower-than-expected rental rates, Rearick defaulted on the loan.

Rearick initially approached ESB about utilizing $800,000 in tax credits to ease some of his debt burden, but ESB instead directed Rearick to sell his rental properties. One month later, ESB accelerated the loan, making the entire balance due and payable immediately. On June 1, 2009, apparently prior to Rearick's default, ESB executed deeds in lieu of foreclosure for the ten parcels of property that had secured the Saltwork Project loan, not including the Saltwork Project property

5

Rearick v. Elderton State Bank
No. 2012-1615-Civil

itself, which was appraised at approximately $1.45 million. ESB did not list the properties with a real estate broker. Instead, it advertised the properties in the local *Horse Trader*, which is a weekly advertisement publication. The properties were not able to be sold at their appraised values. One property, valued at $450,000.00, ultimately was sold for $46,000.00, despite ESB having previously received an offer of $360,000.00. The Saltwork Project property was advertised by an auctioneer hired by ESB. On October 29, 2010, Smith purchased the Saltwork Project property for $450,000.

## III. **PROCEDUREAL HISTORY**

ESB ultimately foreclosed on the properties that had secured the Saltwork Project. This Court entered summary judgment in ESB's favor on June 11, 2008, at Civil No. 2011-0984. Rearick subsequently filed the instant action on October 24, 2012. He brings claims for Breach of Contract (Implied Covenant of Good Faith and Fair Dealing)(Count I), Breach of Fiduciary Duty (Count II), Alter Ego (Count III), and Negligence (Count IV). ESB filed preliminary objections challenging all counts of Rearick's complaint. With the exception of ESB's first preliminary objection based on *res judicata*, we rule on each of the objections as follows.[1]

---

[1] Because the issue regarding whether ESB used commercially reasonable practices in its attempt to liquidate the properties that secured the Saltwork Project was raised and litigated in the prior mortgage foreclosure

6

Rearick v. Elderton State Bank
No. 2012-1615-Civil

## IV.  DISCUSSION

### 1.  Preliminary Objection 2 - Demurrer (Count I)

ESB first demurs to Court I of Rearick's complaint for breach of the contractual duty of good faith and fair dealing. ESB contends that it did not owe Rearick a duty of good faith and fair dealing merely because of the parties' lender-borrower relationship.  ESB further argues that even if such a duty did exist, Rearick has not pled sufficient facts to establish that it breached such a duty.  Rearick counters that a contractual duty of good faith was implied in the loan documents executed by the parties and that he has pled facts showing that ESB breached its duty by maneuvering to protect itself against the increasingly debt-laden Saltwork Project.

In *Creeger Brick and Building Supply, Inc. v. Mid-State Bank and Trust Co.*, 560 A.2d 151 (Pa. Super. Ct. 1989), the Superior Court confronted facts remarkably similar to those in this case, addressing the issue of "whether a borrower has stated a legally cognizable cause of action against a lending institution which, although it has not violated the terms of its loan agreement, has allegedly failed to deal with its borrower in good faith."  *Id.* at 152.  Because the facts in *Creeger* are

---

action, Rearick is precluded in this case from seeking any damages allegedly arising from ESB's conduct in this regard.  *See* Superior Ct. Op. at 21.

7

so analogous to those alleged in this case, we will discuss *Creeger* in some detail.

In *Creeger*, the plaintiff/appellant borrowers had purchased a closed, apparently dilapidated factory property with the intention of rehabilitating it and reopening a brick manufacturing plant. *Id.* The project was financed principally by a loan from the defendant/appellant bank in the amount of $250,000.00. *Id.* The Small Business Administration guaranteed ninety percent (90%) of this loan, which was further secured by the factory property and additional residential properties owned by the plaintiff borrowers. The plaintiff borrowers contributed a substantial sum of their own money to the project, together with funds that they borrowed from other entities. *Id.*

The plant initially did not become operational for several months and was closed for several additional months in the winter season. *Id.* at 153. This caused the plaintiffs to suffer a cash shortage, and so they requested an additional line of credit from the defendant bank. The bank denied their request. *Id.* The plaintiffs then requested that the bank release one of their residential properties so that it could be sold for additional funds. The bank ultimately agreed to do so, but on terms that plaintiffs could not meet. The plaintiffs ultimately found another lender who was willing to purchase 90% of the defendant bank's loan and make additional funds available

8

to the plaintiffs. The bank refused to assign the loan and demanded payment under its guarantee from the Small Business Administration. The plaintiffs thereafter suffered financial collapse. *Id.*

The plaintiff borrowers filed suit against the bank, alleging that, although it had not breached any specific terms of the loan agreement with the plaintiffs, it failed to act in good faith in the following respects: 1) failing to provide a line of credit to plaintiffs; 2) unreasonably requiring the plaintiffs to use borrowed funds to buy equipment and make repairs; 3) failing to release a property from the loan so that plaintiffs could secure additional capital; 4) failing to cooperate with the plaintiffs to obtain supplemental financing; 5) over-collateralizing the loan; 6) failing to notify plaintiffs of its demand for payment on the guarantee from the Small Business Administration; and 7) taking the position that the plaintiffs were not able to produce marketable product at the plant and notifying the plaintiffs' other lenders of that fact. *Id.* at 153. The defendant bank filed preliminary objections to the complaint, demurring to the claim for breach of the duty of good faith on the ground that such an action did not exist in Pennsylvania. The trial court sustained the preliminary objections and dismissed the claim. *Id.* at 152.

Rearick v. Elderton State Bank
No. 2012-1615-Civil

On appeal, the Superior Court summarized as follows the law

of good faith as it applies to lender-borrower relationships:

> Section 205 of the Restatement (Second) of Contracts
> suggests that "[e]very contract imposes upon each
> party a duty of good faith and fair dealing in its
> performance and its enforcement." A similar
> requirement has been imposed upon contracts within the
> Uniform Commercial Code by 13 Pa.C.S. § 1203. The duty
> of "good faith" has been defined as "[h]onesty in fact
> in the conduct or transaction concerned." Where a duty
> of good faith arises, it arises under the law of
> contracts, not under the law of torts. In this
> Commonwealth the duty of good faith has been
> recognized in limited situations. Most notably, a
> duty of good faith has been imposed upon franchisors
> in their dealings with franchisees. It has also been
> imposed upon the relationship between insurer and
> insured. . . .
>
> Conversely, the Supreme Court of Pennsylvania has
> refused to impose a duty of good faith which would
> modify or defeat the legal rights of a creditor. . . .
>
> It seems reasonably clear from the decided cases that
> a lending institution does not violate a separate duty
> of good faith by adhering to its agreement with the
> borrower or by enforcing its legal and contractual
> rights as a creditor. The duty of good faith imposed
> upon contracting parties does not compel a lender to
> surrender rights which it has been given by statute or
> by the terms of its contract. Similarly, it cannot be
> said that a lender has violated a duty of good faith
> merely because it has negotiated terms of a loan which
> are favorable to itself. As such, a lender generally
> is not liable for harm caused to a borrower by
> refusing to advance additional funds, release
> collateral, or assist in obtaining additional loans
> from third persons. A lending institution also is not
> required to delay attempts to recover from a guarantor
> after the principal debtor has defaulted. Finally, if
> the bank in this case falsely represented appellants'
> financial circumstances to other creditors for the
> purpose of damaging appellants' ability to continue
> doing business, appellants may have causes of action
> in tort for slander, misrepresentation, or

10

> interference with existing or prospective contractual
> relations. There is no need in such cases to create a
> separate tort for breach of a duty of good faith.

*Creeger*, 560 A.2d at 153-54 (internal citations omitted). Given

the nature of the plaintiffs' allegations, which essentially

claimed that that bank failed to extend them extra credit,

failed to work with them to obtain additional financing

elsewhere, and maneuvered to protect itself against the

plaintiffs' default, the Superior Court agreed with the trial

court that the plaintiffs had failed to plead facts sufficient

to establish a claim for breach of the duty of good faith and

affirmed the trial court's decision. *Id.* at 155.

The Superior Court confirmed the *Creeger* decision in *Cable*

*& Assocs. Ins. Agency, Inc. v. Commercial Nat'l Bank of Pa.*, 875

A.2d 361 (Pa. Super. Ct. 2005). In *Cable & Associates*, the

plaintiff borrower brought claims for "Lender's liability" and

"Bad Faith" against the defendant bank, alleging that the bank

engaged in bad faith when it refused to release certain accounts

receivable from the security on the plaintiff's loan so that it

could obtain additional financing elsewhere. *Id.* at 362-63.

The plaintiff alleged that the bank intended to transfer the

money received from the accounts to an insurance business in

which it had an interest. *Id.* at 363. The bank demurred to

both claims, alleging that there existed no duty of good faith

11

in the lender-borrower relationship. *Id.* The trial court agreed, and sustained the preliminary objections. *Id.*

On appeal, the Superior Court, relying on *Creeger*, noted that there does not exist a separate duty of good faith between a borrower and lender outside of the general contractual duty of good faith inherent in every contract. *Id.* at 364. *But see Corestates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1059 (Pa. Super. Ct. 1999) ("due to the longstanding relationship between the parties in this case, we cannot say that the parties have not, as a matter of law, developed a relationship wherein the Bank owes appellant [borrower] a duty of good faith"). The Court reiterated that "a borrower may plead sufficient facts to make out a claim that a lender violated its general duty of "good faith" arising out of the law of contracts." *Id.* However, the court was careful to note that a borrower must demonstrate more than the fact that a lender negotiated terms of a loan favorable to itself, adhered to and enforced its contractual or statutory rights, or refused to advance additional funds, release collateral, or assist the borrower in obtaining additional financing from other lenders. *Id.* at 364. The court affirmed the trial court's dismissal of the plaintiff's claim, holding that the bank's refusal to release collateral on the plaintiff's loan was insufficient as a matter

12

of law to establish a claim for breach of the duty of good faith. *Id.* at 365.

Based on our readings of *Creeger* and *Cable & Associates*, we find Count I of Rearick's complaint to be devoid of sufficient allegations of *fact* that could establish a claim for breach of the contractual duty of good faith and fair dealing. Examined closely, and without regard to the colorful rhetoric and conclusory allegations regarding ESB's intentions and state of mind, the complaint indicates that Rearick's claim for breach of the duty of good faith and fair dealing is based on the following actions of ESB: 1) encouraging Rearick to expand the Saltwork Project without sufficient financing; 2) selecting Smith as an investor in the project and ensuring that the investment would be repaid using Rearick's payments on the loan; 3) allowing Smith to control the Saltwork Project and make construction and business decisions to benefit ESB and Smith; 4) requiring Rearick to increase the amount of his loan to cover the funds advanced by Smith; 5) overburdening the Saltwork Project with excessive debt and refusing to restructure the debt to benefit Rearick; and 6) executing deeds in lieu of foreclosure and then liquidating the properties in a commercially unreasonable manner. (Complaint at ¶¶ 26(a)-(f)).

These allegations are insufficient as a matter of law to establish that ESB breached any general duty of good faith and

13

fair dealing implicit in the loan documents. Rearick does not allege that ESB violated any terms of any of the loan documents executed among him, ESB, and Smith. Nor does he, outside of generalized statements about ESB's alleged hidden intent and scheming, plead that ESB made any specific misrepresentations or committed any fraud in the parties' business relationship. *See Cable*, 875 A.23d at 365 (plaintiff borrower alleging breach of duty of good faith must "define the issues and every act or performance essential to that end must be set forth in the complaint"; plaintiff's complaint must contain facts to support reasonable inferences as to defendant bank's state of mind or improper behavior). Further, Rearick's own allegations indicate that it was Rearick, and not ESB, that decided to expand the Saltwork Project and request additional funding. The fact that ESB protected its investment with a guarantee from the United States Department of Agriculture, refused to directly advance any further funding to Rearick, and executed loan documents that protected its interests in the deal cannot form the basis of a claim for breach of the duty of good faith and fair dealing. Those facts are almost identical to those in *Creeger*, where the Superior Court rejected the plaintiff's claim. It is noteworthy that Rearick does not discuss the *Creeger* case anywhere in his brief, most likely because it is fatal to Count I of his complaint.

14

Rearick v. Elderton State Bank
No. 2012-1615-Civil

Rearick relies heavily on the fact that ESB allegedly hand-picked Smith as an investor in the Saltwork Project. He contends that ESB, instead of directly loaning more money to Rearick, found an investor, who also was a shareholder of ESB, to advance significant additional funds to the Project, to be repaid via loan payments from Rearick. Pursuant to this arrangement, Rearick alleges that ESB minimized its risk by getting a guarantee from the Department of Agriculture (which Rearick initially suggested) and leaving Rearick with the debt burden. However, none of those facts, even if proven, could amount to bad faith. ESB protected itself with the guarantee and the funds from Smith. It also increased Rearick's debt load, which would have increased in any event had ESB directly loaned the funds to Rearick instead of employing an outside investor. Finally, Rearick alleges that ESB forced the expansion of the Saltwork Project and Rearick to incur more debt, and then deviously failed to fund the project to completion. However, Rearick himself admits in the complaint that the Project was expanded at his request, that he desired the additional funds to support the expansion, and that the Project ultimately was funded to completion. *Compare* Complaint, ¶ 26 *with* Complaint, ¶¶ 4, 7, 8, 9, 16.

Moreover, we further find that Rearick has failed to plead any facts to establish a duty of good faith separate and apart

15

from the general duty of good faith contained in the parties' loan documents. A plaintiff borrower may establish the existence of a separate duty of good faith owed by a lender if it can establish that it and the lender's relationship is longstanding and of a quality that would give rise to such a duty. *See Cutillo*, 723 A.2d at 1059. In the instant case, Rearick pleads a single allegation that his family and ESB had been "doing business with ESB for more than 50 years." (Complaint, ¶ 4). He does not, however, allege any facts with regard to the nature of the relationship, the types of transactions that were involved, or, most importantly, the specifics of the relationship between ESB and Rearick himself. Without more, Rearick has failed to allege any facts that could give rise to an independent duty of good faith outside of the loan documents. *Compare Cutillo*, 723 A.2d at 1059.

In sum, even accepting as true all of the material facts pled in the complaint, many of which are contradictory, we cannot glean any set of circumstances that could support a viable claim for breach of the contractual duty of good faith and fair dealing. For all these reasons, and based on the Superior Court's decisions in *Creeger* and *Cable & Associates*, we conclude that Count I of Rearick's complaint fails as a matter of law and must be dismissed.

2. **Preliminary Objection 3 - Failure to Conform (Count I)**

ESB next argues that Count I of Rearick's complaint should be dismissed pursuant to Pa. R. Civ. P. 1028(a)(2) and Pa. R. Civ. P. 1019(i) because Rearick did not attach to his complaint the loan documents that form the basis of his breach of contract claim. Rearick counters that he is not required to attach any of the loan documents because the breach of contract claim is based on an "implied" duty and not on any particular term of the loan documents. He argues alternatively that he is under no obligation to attach the loan documents because they are in ESB's possession.

Rule 1019(i) of the Pennsylvania Rules of Civil Procedure provides as follows:

> (i) When any claim or defense is based upon a writing, the pleader shall attach a copy of the writing, or the material part thereof, but if the writing or copy is not accessible to the pleader, it is sufficient so to state, together with the reason, and to set forth the substance in writing.

Pa. R. Civ. P. 1019(i). By its clear language, the Rule requires a plaintiff to attach to the complaint the writings on which the claims in the complaint are based. Although this requirement may be waived or overlooked where the missing documents are in the possession of the defendant, *see* 4 Standard Pa. Prac. 2d § 21:80, Rearick has not argued any viable reason why the requirement should be waived in this case. He does not

17

argue that the loan documents are large and cumbersome or that attaching them would incur significant cost. He further does not argue that he is not in possession of the loan documents or that he has demanded a copy from ESB and they were not produced. Rearick instead merely relies on the fact that ESB is in possession of the documents, and therefore he should not have to attach them.

Because Count I of the complaint does not allege a specific breach of any of the terms of the loan documents, and because ESB no doubt is in possession of those documents, we will not dismiss Count I solely on the basis of Rearick's failure to attach them to the complaint. We note, however, that because the documents are not attached, their contents do not become a part of the allegations in the complaint, and we do not have the benefit of reviewing them to better determine the relationship between the parties. Nevertheless, we will overrule this preliminary objection.

3.   **Preliminary Objection 4 - Demurrer (Count II)**

ESB next demurs to Count II of Rearick's complaint for breach of fiduciary duty. Rearick alleges that ESB owed a fiduciary duty to Rearick created by ESB's exertion of control over the Saltwork Project via its "proxy," Smith. ESB contends that no fiduciary duty existed between ESB and Rearick because

Rearick has not pled facts sufficient to show the requisite control necessary to create the duty. We agree.

For a fiduciary relationship to exist in a commercial setting, there must be a special relationship between the parties involving "confidentiality, the repose of special trust or fiduciary responsibilities." *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 22 (Pa. Super. Ct. 2002)(citing *Valley Forge Convention & Visitors Bureau v. Visitor's Servs., Inc.*, 28 F. Supp.2d 947, 952-953 (E.D. Pa. 1998)). Such a relationship "generally involves a situation where by virtue of the respective strength and weakness of the parties, one has the power to take advantage of or exercise undue influence over the other." *Id.* The critical question is "whether the relationship goes beyond mere reliance on superior skill, and into a relationship characterized by 'overmastering influence' on one side or 'weakness, dependence, or trust, justifiably reposed' on the other side." *eToll*, 811 A.2d at 23 (quoting *Basile v. H & R Block*, 777 A.2d 95, 101 (Pa. Super. Ct. 2001)).

Ordinarily, the relationship between a lender and a borrower is contractual in nature and does not give rise to a confidential relationship. *See Fed. Land Bank of Baltimore v. Fetner*, 410 A.2d 344, 348 (Pa. Super. Ct. 1979); *Buczek v. First Nat'l Bank*, 531 A.2d 1122, 1124 (Pa. Super. Ct. 1987); *Temp-Way Corp. v. Continental Bank*, 139 B.R. 299, 318 (E.D. Pa. 1992).

19

However, the ordinary lender-borrower relationship may be transformed into a special or fiduciary relationship if the lender gains substantial control over the borrower's business affairs. *Stainton v. Tarantino*, 637 F. Supp. 1051, 1066 (E.D. Pa. 1986). "Control over the borrower is demonstrated when there is evidence that the lender was involved in the actual day-to-day management and operations of the borrower or that the lender had the ability to compel the borrower to engage in unusual transactions." *Temp-Way*, 139 B.R. at 318. Generally, courts have required a strong showing of control to establish a fiduciary relationship. *Blue Line Coal Co., Inc. v. Equibank*, 683 F. Supp. 493, 496 (E.D. Pa. 1988). A lender's actions in monitoring the borrower's operations, proffering of management advice, or taking measures to minimize risk do not constitute sufficient control to establish a fiduciary relationship. *Temp-Way*, 139 B.R. at 318; *Blue Line Coal*, 683 F. Supp. At 496-97 (citing cases).

Rearick alleges in his complaint that: "[a]s a result of ESB selecting the individual with whom Rearick would 'partner' and by ESB, through its proxy, taking direct control of the Saltwork Project, ESB's involvement with Rearick extended beyond the traditional lender/borrower relationship to form a confidential relationship giving rise to a fiduciary duty." (Complaint, ¶ 29); "ESB, acting through its proxy, exercised

20

Rearick v. Elderton State Bank
No. 2012-1615-Civil

complete control over the Saltwork Project, going so far as to make construction decisions and pass judgment on what kind of business constituted an appropriate tenant" (*Id.*, ¶30); and "the Saltwork Project was completed with Smith, as ESB's surrogate, assuming complete control of the Saltwork Project and making all decisions relating to construction, build-out, tenant selection and the like." (Complaint, ¶ 16). Rearick does not allege that ESB or any of its employees directly controlled Rearick, his business, his decisions, or the day-to-day operations of the Saltwork Project. Nor does Rearick argue that ESB directly managed the funds that were used to finance the construction of the Saltwork Project. Rearick instead contends that ESB, through a "proxy" or "surrogate," controlled the Saltwork Project. Thus, as a preliminary matter, for Rearick's breach of fiduciary duty claim to succeed, he must be able to show that Smith was ESB's agent, expressly or implicitly authorized to make decisions and take actions binding on ESB.

The Pennsylvania Supreme Court has summarized the parameters of the principal-agent relationship as follows:

> The law is clear in Pennsylvania that the three basic elements of agency are: the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking. Agency results only if there is an agreement for the creation of a fiduciary relationship with control by the beneficiary. The burden of establishing an agency

21

relationship rests with the party asserting the
relationship. An agency relationship is a fiduciary
one, and the agent is subject to a duty of loyalty to
act only for the principal's benefit. Thus, in all
matters affecting the subject of the agency, the agent
must act with the utmost good faith in furthering and
advancing the principal's interests, including a duty
to disclose to the principal all relevant information.

. . .

The special relationship arising from an agency
agreement, with its concomitant heightened duty,
cannot arise from any and all actions, no matter how
trivial, arguably undertaken on another's behalf.
Rather, the action must be a matter of consequence or
trust, such as the ability to actually bind the
principal or alter the principal's legal relations.
Indeed, implicit in the long-standing Pennsylvania
requirement that the principal manifest an intention
that the agent act on the principal's behalf is the
notion that the agent has authority to alter the
principal's relationships with third parties, such as
binding the principal to a contract.

*Basile v. H & R Block*, 761 A.2d 1115, 1120, 1121 (Pa.

2000)(internal citations and quotations omitted).

Considering these principles, we conclude that Rearick has

failed to plead facts sufficient to establish an agency

relationship between ESB and Smith that would operate to bind

ESB to Smith's actions with regard to the Saltwork Project.

Rearick alleges throughout his complaint that ESB selected

Smith, who was then a shareholder of ESB, to be an investor in

the Project, built into the loan documents a guarantee to

protect Smith's investment, and that Smith, after Rearick's

default, purchased the Saltwork Project property. These facts,

22

even accepted as true and taken in the light most favorable to Rearick, do not establish that ESB manifested its intention for Smith to act on its behalf, to alter ESB's relationship with Rearick or other third parties, or to bind ESB in its legal dealings. The facts instead establish, at most, that Smith acted as an investor in the Project and took actions for his own benefit. There is no indication in the complaint that Smith acted specifically for ESB's benefit or under its direction. Further, the mere fact that Smith allegedly was a shareholder of ESB does not, in and of itself, create an agency relationship. A shareholder does not, by virtue of its ownership interest in a corporation, become a *de facto* agent of the corporation in dealing with third parties. *MacBrine-McAdams Realty Co. v. Morris*, 196 A. 511, 512 (Pa. Super. Ct. 1938)(citing *Puritan Coal Mining Co. v. Pa. Railroad Co.*, 85 A.426, 432-33 (Pa. 1912)).

Even assuming that Smith became ESB's agent, Rearick nonetheless has failed to allege facts in his complaint that would evidence the level of control necessary to create a fiduciary relationship between ESB and Rearick. Rearick alleges that Smith made construction decisions, determined what kinds of tenants he thought would be appropriate, and made decisions regarding "build-out." He makes several conclusory allegations that Smith took "direct" and "complete" control of the Saltwork

23

Rearick v. Elderton State Bank
No. 2012-1615-Civil

Project, but he alleges no *facts* to support those contentions.
He does not allege that either Smith or ESB entered into
contracts with builders, subcontractors, or tenants. He does
not allege that either ESB employees or Smith dealt with local
government agencies and municipalities in securing necessary
permitting, utilities, taxes, or the like. Most importantly,
with regard to the funds disbursed to Rearick, he does not
allege that ESB or Smith dictated how the funds would be
disbursed, managed payments to third parties, or in any other
way exercised dominating control over the funding, planning, or
management of the Saltwork Project. Other than making decisions
regarding construction matters and rendering opinions with
regard to who would be appropriate tenants on the premises,
Smith, and thereby ESB, did not exert the requisite level of
control over Rearick or the Saltwork Project that would create a
fiduciary duty.

Rearick relies heavily on the Superior Court's decision in
*Garbish v. Malvern Federal Savings and Loan Ass'n*, 517 A.2d 547
(Pa. Super. Ct. 1986) to support his argument that ESB owed
Rearick a fiduciary duty outside of their ordinary lender-
borrower relationship. We find *Garbish* to be markedly
distinguishable from the case at bar. In *Garbish*, the plaintiff
borrowers brought suit against the defendant bank in trespass
and assumpsit, alleging that the bank misappropriated the

24

disbursement of funds from a construction account over which the bank retained complete control. *Id.* at 550. The plaintiffs in *Garbish* argued that the bank owed the plaintiffs a fiduciary duty as their agent in disbursing the construction funds, which the bank breached. A jury agreed, and the bank appealed the verdict. *Id.* at 550-51.

On appeal, the Superior Court agreed that the bank owed the plaintiffs a fiduciary duty given the degree of control that the bank exercised over the fund used to finance the construction of the plaintiffs' new home. The court noted that the fund was created at closing, where both the plaintiffs and the building company were required to execute a building agreement, a schedule of operations, and a description of materials. The plaintiffs also were required to contribute $16,000 of their own money at closing that ultimately would be controlled by the bank. *Id.* at 549. The plaintiffs in *Garbish* were not permitted to participate at all in the payments that the bank made to the builder and generally were not advised of the nature and details of the vouchers that were paid. The bank also expressly told the plaintiffs that it was an expert in the disbursement of construction fund money and utilized its own inspectors to review the progress of the construction site. *Id.* at 549-50. Based on those facts, the Superior Court concluded that the bank had indeed exercised absolute and exclusive authority over the

25

Rearick v. Elderton State Bank
No. 2012-1615-Civil

building project and the fund that was financing it. *Id.* at 551.

Such are not the facts pled in Rearick's complaint. There are no indications that ESB or Smith managed the day-to-day operations of the Saltwork Project. Rearick cannot merely state that Smith exerted "complete" control over the Project without *showing* how that occurred, particularly with regard to how funds were used and who made financial decisions.

For these reasons, we will sustain ESB's preliminary objection and dismiss Count II of Rearick's complaint.

### 4. Preliminary Objection 5 - Demurrer (Count IV)

ESB demurs to Count IV of Rearick's complaint for negligence on several grounds. ESB argues first that the claim is barred by Pennsylvania's "gist of the action doctrine." ESB next argues that the negligence claim fails because Rearick has failed to plead facts that would establish that ESB either owed a duty of care to Rearick or that any breach of such a duty caused Rearick's default. Finally, ESB argues that the negligence claim is barred by the "economic loss doctrine." We will address each argument in turn.

#### a. Gist of the Action

The "gist of the action" doctrine remains viable in Pennsylvania, as it is used and addressed frequently by the Superior Court and has not expressly been rejected by the

26

Supreme Court. *See Reardon v. Allegheny College*, 926 A.2d 477,

486 & nn. 10,11 (Pa. Super. Ct. 2007). Generally, the doctrine

bars a plaintiff from re-casting ordinary breach of contract

claims into tort claims. *Empire Trucking Co., Inc. v. Reading

Anthracite Coal Co.*, 71 A.3d 923, 931 n.2 (Pa. Super. Ct. 2013).

In *Reardon*, the Superior Court summarized the doctrine as

follows:

> The gist of the action doctrine acts to foreclose tort
> claims: 1) arising solely from the contractual
> relationship between the parties; 2) when the alleged
> duties breached were grounded in the contract itself;
> 3) where any liability stems from the contract; and 4)
> when the tort claim essentially duplicates the breach
> of contract claim or where the success of the tort
> claim is dependent on the success of the breach of
> contract claim. The critical conceptual distinction
> between a breach of contract claim and a tort claim is
> that the former arises out of breaches of duties
> imposed by mutual consensus agreements between
> particular individuals, while the latter arises out of
> breaches of duties imposed by law as a matter of
> social policy.

*Reardon*, 926 A.2d at 486-87 (internal quotations and citations

omitted). "A breach of contract may give rise to an actionable

tort where the wrong ascribed to the defendant is the gist of

the action, the contract being collateral." *Hart v. Arnold*, 884

A.2d 316, 339 (Pa. Super. Ct. 2005). In determining whether the

doctrine applies to bar a tort claim, Pennsylvania courts employ

the following principles:

> When a plaintiff alleges that the defendant committed
> a tort in the course of carrying out a contractual
> agreement, Pennsylvania courts examine the claim and

determine whether the "gist" or gravamen of it sounds in contract or tort. The test is not limited to discrete instances of conduct; rather, the test is, by its own terms, concerned with the nature of the action as a whole.

*Indalex Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 83 A.3d 418, 424 (Pa. Super. Ct. 2013)(quoting *Erie Ins. Exchange v. Abbott Furnace Co.*, 972 A.2d 1232, 1238 (Pa. Super. Ct. 2009)).

We note first that the relationship between Rearick and ESB essentially was contractual. Although Rearick generally alleges that his family and ESB had a relationship lasting more than 50 years, such a relationship in and of itself does not give rise to a special, social relationship that would create any duties between them independent of their financial agreements. Rearick argues in his brief that the duties underlying his negligence claim arise from the "special relationship" between ESB and Rearick, whereby ESB made Rearick's business decisions for him and "took control" of the business. (Rearick Brief, at 12). Rearick alleges that ESB selected Smith as an investor and forced Rearick to enter into a relationship with him so that the Saltwork Project could be financed by Smith's funds. He further alleges that ESB entered into a financing arrangement with Rearick such that Smith would be paid back his investment via Rearick's payments on the loan. Rearick contends that ESB protected itself against a significant majority of the financial risk of the Project by utilizing the Business and Industry

28

Rearick v. Elderton State Bank
No. 2012-1615-Civil

Guaranteed Loan Program, which Rearick himself initially suggested to ESB. (Complaint, ¶¶ 5, 12-17).

We conclude that, as pled, the alleged duties giving rise to Rearick's negligence claim are grounded in what Rearick argues is a "special relationship" that existed between the parties outside the parameters of the loan documents. The gravamen of Rearick's claims in this regard essentially sound in tort and not in contract. This relationship is the very relationship that forms the basis of Rearick's breach of fiduciary duty claim, discussed *infra*. The only contractual claim in Rearick's complaint is Count I, which is based on a general duty of good faith and fair dealing. Rearick does not allege any specific breaches of any of the several agreements between himself and ESB. We therefore are constrained to conclude that his action, taken as a whole, is grounded in what he contends are duties arising out of social policy considerations and not strictly contractual obligations. For this reason, we conclude that the gist of the action doctrine does not, in and of itself, bar Rearick's negligence claim. We already have discussed, and will again discuss *supra*, whether these alleged duties are in fact present in this case.

b.    Economic Loss Doctrine

ESB contends that Rearick's negligence claim, which seeks monetary damages in excess of $25,000, is barred by

29

Rearick v. Elderton State Bank
No. 2012-1615-Civil

Pennsylvania's economic loss doctrine. The economic loss doctrine, as adopted by the Pennsylvania Supreme Court, provides that "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." *Knight v. Springfield Hyundai*, 81 A.3d 940, 952 (Pa. Super. Ct. 2013) (quoting *Excavation Technologies, Inc. v. Columbia Gas Co. of Pa*, 985 A.2d 840, 841 (Pa. 2009)). *See also Id.* at 952 n. 9 (noting alternative definitions of the doctrine, which preclude recovery in tort of purely economic losses that either arise exclusively from a contract or are unaccompanied by physical harm to a plaintiff or his property).

Rearick does not specify the amount of damages that he seeks in this action. It is unclear from the complaint whether he seeks reimbursement of funds paid on the loans that financed the Saltwork Project, the value of the properties that were foreclosed upon in the mortgage foreclosure action, or another amount. What is clear, however, is that any damages that Rearick allegedly has suffered are purely economic and cannot be recovered via his negligence claim. Rearick has not alleged any personal injury or damage to property as a result of any of ESB's actions. Instead, he claims that he seeks monetary damages together with damages as a result of the "loss of his properties which ESB frivolously disposed of through the *Horse Trader* or unfairly bestowed upon its own agent." (Rearick

30

Rearick v. Elderton State Bank
No. 2012-1615-Civil

Brief, at 14); (Complaint, ¶¶ 19-22). The loss of the properties and their value also is economic harm that cannot be recovered in a negligence claim. Moreover, the loss of Rearick's income-producing properties, which he argues came as a result of ESB's "frivolous" manner of reselling them and unfair bestowal of the properties on Smith, are damages that cannot be recovered in this action. They directly are related to the prior mortgage foreclosure action and permitting such a claim in this action would undermine ESB's judgment in that case. *See* Superior Court Op. at 21.

Accordingly, we conclude that Rearick's negligence claim is barred by the economic loss doctrine, and we will sustain ESB's preliminary objection in this regard.

c.    Duty and Causation

To establish a claim for negligence, a plaintiff must demonstrate that "the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff, and the plaintiff suffered an actual loss or damage." *Martin v. Evans,* 711 A.2d 458, 461 (Pa. 1998).

Rearick alleges in his negligence claim that ESB owed him a duty of care arising out of "its longstanding relationship with him," its directive to him to contact other investors for the Saltwork Project, and its "brokering" of the transaction between him and Smith. (Complaint, ¶¶ 39-41) He then alleges that ESB

31

breached those duties of care by selecting Smith as an investor and colluding with him to place Rearick at a disadvantage. These alleged duties are separate and apart from the duties that undergird Rearick's breach of contract and breach of fiduciary duty claims. The facts, however, do not as a matter of law give rise to a duty of care running from ESB to Rearick that is independent of the duties embodied in the loan documents between the parties. Absent a special relationship that would give rise to a potential fiduciary duty, a lending institution does not owe a general duty of care to a borrower. *See Rousseau v. City of Phila.*, 514 A.2d 649, 652 (Pa. Commw. Ct. 1986). Rearick argues in his brief that a duty of care arose because of the "special role" that ESB took in Rearick's business by controlling its business through its alleged agent, Smith. That relationship, however, if it did indeed exist, would give rise to a potential claim for breach of fiduciary duty and not one for ordinary negligence. As we discussed above, no claim for breach of fiduciary duty exists in this case.

Moreover, Rearick has not pled any facts to substantiate his allegations that a duty arose from his prior relationship with ESB. The mere fact that the relationship is alleged to have been for a significant duration (50 years) does not create a duty of care between ESB and Rearick. Nor do the facts that ESB found an investor to fund the Saltwork project and organized

the contractual arrangements to allow the investor to become involved in the Project in and of themselves give rise to a duty of care. Rearick has directed the Court to no legal authority that would support such a duty, and we have not found any in our own search. Thus, we find that Rearick has failed to plead facts that, if true, would establish a duty to support his negligence claim, which we will dismiss on this ground.

We further conclude the Rearick has failed to plead facts sufficient to establish the causation element of his negligence claim. Even assuming that Rearick has pled facts establishing a duty of care and that ESB breached that duty by involving Smith in the financing arrangement, over-leveraging the properties, or organizing or exercising control over the Saltwork Project, Rearick does not plead any facts showing *how* any of the Bank's actions caused Rearick's default. Instead, he alleges that many of the increases in financing were made at his own request, that the Saltwork Project ultimately was completed, and that he paid on the loan for several months before defaulting, at least in part because of "a still floundering economy and tenant occupancy rates that, as a result of a poor economy, were below projections." (Complaint, ¶¶ 4-9, 12, 16, 18). Because Rearick has failed to set forth sufficient facts to establish the causation element of his negligence claim, we will sustain ESB's preliminary objection on this additional ground as well.

Rearick v. Elderton State Bank
No. 2012-1615-Civil

## 5. Preliminary Objection 6 - Demurrer (Count III)

Lastly, ESB demurs to Rearick's "alter ego" claim on the ground that such a claim does not exist in Pennsylvania. Rearick alleges that ESB controlled Rearick and the Saltwork Project to a degree that ESB, Rearick, and the Saltwork Project essentially were the same economic entity. Rearick alleges that ESB controlled the Saltwork Project chiefly through its "proxy," Mr. Smith. We conclude that the "alter ego" theory is inapplicable to this case and, even if it were applicable, Rearick has failed to plead facts that could prove the claim in any event.

The Pennsylvania Superior Court recently has described the nature of the "alter ego" theory of liability as follows:

> Piercing the corporate veil is a means of assessing liability for the acts of a corporation against an equity holder in the corporation. The party seeking to establish personal liability through piercing the corporate veil must show the person in control of a corporation used that control, or used the corporate assets, to further his own personal interests. Pennsylvania law has a strong presumption against piercing the corporate veil. Any inquiry involving corporate veil-piercing must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception. One "exception" is the alter ego theory which requires proof (1) that the party exercised domination and control over corporation; and (2) that injustice will result if corporate fiction is maintained despite unity of interests between corporation and its principal.

34

Rearick v. Elderton State Bank
No. 2012-1615-Civil

*Allegheny Energy Supply Co. v. Wolf Run Min. Co.*, 53 A.3d 53, 58 (Pa. Super. Ct. 2012)(internal citations and quotations omitted). Piercing-the-veil principles may be applied in the context of a lender-borrower context, wherein a corporate lender so controls and dominates a corporate borrower that that corporate construct of the borrower should be set aside and the lender held responsible for the borrower's debts. *See Pearson v. Component Tech. Corp.*, 80 F. Supp.2d 510, 521 (W.D. Pa. 1999); 12 Summ. Pa. Jur.2d Bus. Rel. § 1:30 (2d ed.). Thus, in a lender-borrower relationship, a corporate lender may so dominate and control a corporate borrower that the borrower's debts, incurred at the behest of the lender, must be ascribed to the lender because the borrower's "separate existence was a mere sham." *Pearson*, 80 F. Supp.2d at 523. *See also* 15 Am. Jur. 3d. 695, §4.

Even reading Rearick's complaint in the light most favorable to him, we cannot conceive of how the alter ego theory of piercing the corporate veil applies in this case. There are no allegations that either Rearick or the Saltwork Project were themselves corporate entities. There also are no allegations even suggesting that Rearick is attempting to hold the shareholders of ESB responsible for Rearick's debts. Although Rearick has alleged, in somewhat conclusory fashion, that ESB, via its "proxy," controlled and dominated his business dealings

and the Saltwork Project operations, there simply are no facts suggesting that Rearick seeks to disregard or set aside a particular corporate form. Rearick's argument that ESB must be held accountable for Rearick's debt because ESB dominated and controlled Rearick essentially is duplicative of Rearick's breach of fiduciary duty claim, which we addressed above. The alter ego theory, even in the lender-borrower context, is a child of corporate liability jurisprudence and simply cannot apply in this case. After a diligent search, we have found no authority, in Pennsylvania or any other jurisdiction, that would support such a claim in these circumstances; neither has Rearick provided the Court with any such authority.[2] For these reasons, we will sustain this preliminary objection and dismiss Count III of Rearick's complaint.

## V.   CONCLUSION

For all the reasons stated above, we will sustain ESB's preliminary objections that remain after remand and dismiss Rearick's complaint.

An appropriate Order follows.

---

[2] The alter ego theory typically is used in lender-borrower situations where a separate creditor of an insolvent borrower attempts to disregard the borrower's corporate form to reach the coffers of the lender to satisfy debts incurred by the borrower. We have found no reported cases where an individual borrower seeks to use the alter ego theory to hold a lender corporately responsible for his own debts serviced by that lender.

**IN THE COURT OF COMMON PLEAS OF ARMSTRONG COUNTY, PENNSYLVANIA**

MARK A. REARICK,          )
                                 )
          Plaintiff,    )
                                 )
          vs.          )      No. 2012-1615-CIVIL
                                 )
ELDERTON STATE BANK,    )
                                 )
          Defendant.    )

# 1925(a) OPINION

**Panchik, J.**

Plaintiff Mark A. Rearick ("Rearick") appeals from (1) this Court's Memorandum and Order entered September 24, 2014, which sustained those preliminary objections to Rearick's complaint that remained undecided after remand from the Superior Court, and (2) this Court's Order dated October 24, 2014, denying Rearick's "Motion for Leave to File Amended Complaint." For the reasons that follow, and for the reasons set forth in the Court's Memorandum entered September 24, 2014, I recommend affirmance in both appeals.

## I. PROCEDURAL HISTORY

This case has an unnecessarily protracted and confused procedural history. Rearick filed his original complaint on October 24, 2012. That complaint asserted several contract and tort-based claims against Defendant Elderton State Bank ("ESB") related to the parties' business dealings from 2006 to 2009. ESB filed

Rearick v. Elderton State Bank
No. 2012-1615-Civil

preliminary objections to the complaint, one of which was sustained by this Court on the ground of *res judicata*. The Court declined to decide the remaining preliminary objections as moot. Rearick appealed the Court's decision to the Superior Court, which reversed this Court's decision and remanded with instructions to either rule on ESB's remaining preliminary objections or permit Rearick to amend his complaint. The Court thereafter ruled on the remaining preliminary objections, all but one of which it sustained.[1] The Court therefore dismissed Rearick's complaint and did not grant him leave to file an amended complaint.

On October 14, 2014, twenty days after the entry of the Court's order dismissing his complaint, Rearick filed an amended complaint without leave of court. The amended complaint includes revisions to Counts I and II and also includes two new claims for fraudulent/negligent misrepresentation and "constructive fraud." Ten days later, on October 24, 2014, in motions court, on the last day of the 30-day appeal period following the Court's dismissal of his original complaint, Rearick presented a motion requesting that the Court both "deem" the amended complaint properly filed and permit Rearick to file a second amended complaint. Rearick did not present to the Court or to ESB a proposed second amended complaint prior to or at motions court on October 24, 2014. Nor was

---

[1] The Court overruled ESB's preliminary objection based on the "gist of the action" doctrine. However, the Court sustained several other preliminary objections regarding Rearick's negligence claim, making dismissal of the claim appropriate in any event.

2

Rearick v. Elderton State Bank
No. 2012-1615-Civil

Rearick's first amended complaint either attached to his motion or presented to the Court for review prior to October 24, 2014. ESB submitted a written opposition to Rearick's motion, in which it argued that the filing of the amended complaint was improper, the motion for leave was untimely, and that no proposed second amended complaint was presented to the Court or ESB for review. ESB requested that Rearick's motion be denied without prejudice and Rearick be directed to file an appropriate motion for leave together with the amended pleading that he proposed to file.

Inexplicably, Rearick's counsel then requested that the Court *deny* his motion for leave to file the first and second amended complaints. The Court's order denying the motion clearly indicates that the denial was entered at Rearick's counsel's request and with his written consent. Rearick then filed, the same day, notices of appeal from the Court's orders from both September 24, 2014 and October 24, 2014. The Court thereafter entered an order directing Rearick to file Concise Statements of Errors Complained of on Appeal pursuant to Pa. R. App. P. 1925(b) for each of his two appeals, with which Rearick timely complied. We will address each of his assertions of error in turn.

## II. APPEAL REGARDING PRELIMINARY OBJECTIONS

Rearick makes nine assignments of error in his appeal from the Court's order sustaining ESB's preliminary objections and dismissing his original complaint. All of the issues raised in

3

Rearick v. Elderton State Bank
No. 2012-1615-Civil

Rearick's concise statement thoroughly are addressed in the Court's September 24, 2014 Memorandum. The Court remains convinced that its reasoning is sound and dismissal of Rearick's complaint appropriate. Of note is the fact that Rearick's amended complaint does not include claims for alter ego or negligence, and his motion for leave acknowledges that, at the very least, Counts I and II for breach of the duty of good faith and fair dealing and breach of fiduciary duty are deficient. For these reasons, and for the reasons set forth in the Memorandum entered September 24, 2014, I recommend affirmance on all issues raised in this appeal.

### III. APPEAL REGARDING REARICK'S MOTION FOR LEAVE

The Court frankly is at a loss to fully understand the grounds for this appeal. Rearick asserts in his concise statement that the Court erred by (1) denying his motion to "allow as properly filed" his amended complaint, filed without leave after the Court dismissed his original complaint, and (2) denying Rearick's motion for leave to file a second amended complaint.

The Court acknowledges the governing rule in Pennsylvania that amendments to pleadings may be made at any time and should liberally be permitted. *See Chaney v. Meadville Med. Ctr.*, 912 A.2d 300, 303 (Pa. Super. Ct. 2006)(citing, in part, Pa. R. Civ. P. 1033). Amendment generally should be permitted when it will not work "undue" prejudice on the opposing party. *Id.* Moreover, although orders denying a party's motion for leave to amend a

pleading generally are considered interlocutory and therefore non-appealable, *see Horowitz v. Universal Underwriters Ins. Co.*, 580 A.2d 395, 397 (Pa. Super. Ct. 1990), such orders are appealable if they in essence put a plaintiff "out of court" or control the outcome of the entire case. *Id.*   Here, Rearick's motion for leave to file both his amended and second amended complaints was filed *after* the Court already had dismissed Rearick's original complaint without leave to amend.  Thus, the order dismissing the original complaint was final and appealable.  I will assume for purposes of this appeal that, although Rearick already had been put "out of court," the order denying his request to file amended pleadings effectively worked the same result and should be treated as final for purposes of this appeal.

However, the appealability of the Court's order being established, I conclude that the appeal is without merit in any event on several grounds.  First, the Court did not have any opportunity to rule upon the propriety of Rearick's amended complaint because he did not request leave prior to filing it.  Rule 1028(e) of the Pennsylvania Rules of Civil Procedure provides that "if the filing of an amendment, an amended pleading, or a new pleading is allowed or required," it must be filed either within 20 days after the order permitting the amendment or within a period fixed by the court.  Pa. R. Civ. P. 1028(e).  In this case, the Court sustained ESB's remaining preliminary objections and dismissed Rearick's

Rearick v. Elderton State Bank
No. 2012-1615-Civil

complaint without leave to amend. Therefore, if Rearick desired to file an amended complaint, he should have filed a motion for leave to do so within 20 days of the Court's order. Rearick did not file such a motion and did not present a proposed amended complaint to the Court prior to filing it on October 14, 2014. Thus, on its face, Rearick's motion appears to be untimely and therefore was properly denied.

Second, with regard to Rearick's proposed second amended complaint, neither the Court nor ESB was presented with a copy of the amended pleading before, at, or since motions court on October 24, 2014. Indeed, the Court has never been presented with a proper and timely filed motion for leave to file *any* amended pleadings. Instead, and without notice, the Court was presented with a motion to file *both* an amended complaint and a second amended complaint, without having any prior opportunity to review proposed drafts of either document. On that basis, Rearick's motion for leave to file both proposed amended pleadings is inappropriate and was properly denied by the Court.

Finally, and most importantly, Rearick's counsel requested at motions court on October 24, 2014, that the Court *not* grant the motion for leave to file either his amended or second amended complaints (the latter to which ESB likely would have consented), and instead enter an order, with his express, written consent, that the motion be denied. Thus, the Court had no opportunity to

6

Rearick v. Elderton State Bank
No. 2012-1615-Civil

schedule a separate time for argument on Rearick's motion, permit the submission of a proposed second amended complaint, or permit ESB to review the proposed filing and reconsider its opposition to the motion. In short, Rearick hardly can be heard to complain about an order the entry of which was requested and consented to in writing by his counsel.

I remain convinced that Rearick's motion was untimely-filed, was procedurally defective, and was entered as his request and with his express consent. For those reasons, I recommend affirmance on this appeal.

By the Court:

Date: 12· 16· 2014

_____, J.
James J. Panchik

7